CASE 3—PETITION ORDINARY—OctOBER 10.

# Smith, by &c., v. Louisville & Nashville Railroad Company.

### APPEAL FROM FRANKLIN CIRCUIT COURT.

1. RAILROADS—LIABILITY FOR ACT OF BRAKEMAN IN EJECTING TRESPASSER FROM TRAIN.—A brakeman on a railroad train, as well as the conductor, is conclusively presumed to have authority to eject trespassers or intruders, and if he uses unnecessary violence in doing so the company is responsible for the injury resulting, unless the act of the servant was malicious.

    In this action against a railroad company to recover for injuries alleged to have been suffered by plaintiff from being kicked by a brakeman from a moving train upon his refusal to pay his fare, the court erred in submitting to the jury the question whether "it was a part of the duty of the brakeman, under his employment as brakeman, to eject or put off the train persons who failed or refused to pay their fare," that being a question of law for the court.

2. SAME—PLEADING.—The fact that the act of ejection is charged in the petition to have been done willfully does not show the act to have been malicious on the servant's part, and therefore beyond the scope of his authority, as the servant is not charged with committing the act willfully, but the company is charged to have willfully done it by its agent and servant.

3. NECESSITY FOR REPLY.—The allegation of the answer that the plaintiff voluntarily swung himself off the train was but a denial of the averment of the petition that he was kicked off, and did not require a reply.

R. S. DINKLE FOR APPELLANT.

The brakeman was acting within the scope of his employment, and therefore the company is liable for his wrongful act. (4 Am. and Eng. Railroad Cases, 537; 1 Am. and Eng. Railroad Cases, 461; 87 N. Y., 25; 46 N. Y., 526.)

J. A. SCOTT OF COUNSEL ON SAME SIDE.

JOHN W. RODMAN FOR APPELLEE.

1. It was no part of the duty of the brakeman to eject trespassers from the train, and therefore the company is not liable. (Sherley v. Billings, 8 Bush, 151; 2 Wood's Railway Law, sec. 316, p. 1202; 2 Rorer on Railroads, pp. 1100, 1190; Towanda Coal Co. v. Heeman, 86 Pa.

Smith, by &c., v. Louisville & Nashville Railroad Company.

St., 418; Farber v. M. P. R. Co., 32 Mo. App., 378; Cox v. Keahey,
36 Ala., 340; s. c., 78 Am. Dec., 325; Wright v. Willcox, 19 Wend.,
343; s. c., 57 Am. Dec., 507; Flower and Wife v. Penn. R. Co., 69 Pa.
St., 210; s. c., 8 Am. Rep., 351; Marion, &c., v. C., R. I. & P. R. Co.,
59 Iowa, 428; Stevenson v. Southern Pac. Co., 93 Cal., 558; s. c., 27
Am. St. Rep., 223.)

2. The allegation in the petition that the act of the brakeman was "will-
ful" relieves the company of liability.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The plaintiff, a minor, suing by his next friend, alleged
that while he was riding on the defendant's car from Col-
lins Station to the city of Frankfort, and while the car
was in rapid motion, " the defendant willfully, negligently
and carelessly, by one of its agents and servants, to-wit,
a brakeman, kicked and threw " him off of its train,
thereby breaking his arm and causing him other serious
injury.

The defendant denied these averments, and for a fur-
ther defense alleged that the plaintiff secretly got on the
rear end of one of its trains for the purpose of obtaining
a free ride to Frankfort, and while so riding was discov-
ered by its agent and servant, and thereupon voluntarily
jumped off the car when in rapid motion, and whatever
injury he received was caused by his own act.

The plaintiff, who was seventeen years of age and whose
home was in Frankfort, testified that he had been work-
ing at Collins Station, some two miles west of the city,
and, becoming sick, had gotten on the train for the pur-
pose of stealing a ride home.   That he was sitting on the
platform, with his feet on the step, and was discovered by the
brakeman, who demanded his fare, and upon his not hav-
ing either a ticket or any money, he was told that he must
get off.   He replied that he would if the train would stop.
The brakeman then said: "I thought I told you to get off

of here," and at the same time kicked him upon the hip, which broke loose his hold on the railing, and he fell headlong on the ground, becoming unconscious, etc.

The brakeman testified that, when he discovered the plaintiff and ascertained that he had neither a ticket nor money, he told him that he must get off when the train got to the bridge, and that before he finished the sentence the plaintiff answered that he would get off now, and swung himself off in the cut, etc. He also testified, over the objection of the plaintiff, that "he had no authority from the conductor, or in any way, to put persons off the train," and that it was not his duty to do so; but that it was his duty to look after the comfort of the passengers and to assist them in getting on and off at stations, and, in the absence of the conductor, to take up tickets and collect fares for the convenience of the conductor when he was engaged in other parts of the train. That if the plaintiff had paid him he would have handed it to the conductor, etc.

The conductor testified that the brakeman had no authority to put any one off for non-payment of fare, and he gave him no such instruction. "It is his duty," testified the conductor, "to look after the safety and comfort of passengers, to assist them on and off the train, and to assist me in ejecting an unruly passenger or one who has no right to ride, and, when I am otherwise engaged, to collect tickets and fares and give them to me," etc.

Upon this state of case, the court told the jury that if they believed from the evidence "that it was a part of the duty of the brakeman, under his employment as brakeman, to eject or put off of the train persons who failed or refused to pay their fare, and they shall further believe

that the brakeman kicked plaintiff off the cars while in motion, or used unnecessary force in putting him off the car, they should find for the plaintiff such damages as he sustained thereby, not exceeding ten thousand dollars;" but that if they believed from the evidence "that the plaintiff jumped off the train, and was not kicked off by the defendant's employe, they should find for the defendant;" and lastly, that if they believed from the evidence " that the brakeman was not charged or required as part of his duty, under his employment as brakeman, to put persons off the train who had failed to pay their fare, they should find for the defendant."

The jury found for the defendant, and did so possibly because, without regard to the question of whether the brakeman kicked the plaintiff off the train, the proof submitted to them was conclusive that the brakeman had not been instructed to put persons off the train, and that such service was no part of his duty.

We are of opinion that the only question, under the pleadings and the proof, which should have been submitted to the jury, was whether the brakeman kicked the plaintiff from the train. It was admitted that the brakeman was an employe of the defendant, and that the train was in rapid motion when the plaintiff got off or was kicked off. Whether or not what the brakeman did was in the scope of his authority, or in the line of his employment, was a question of law or of mixed law and fact, to be determined by the court alone from the proof, if, indeed, that were required, and from common observation and experience, from knowledge of the nature of the business and the daily practices which obtain in its exercise. Now we know it to be held universally that

the conductor, using no unnecessary force, may remove from the car persons who refuse to pay their fare, or are drunk, riotous or unruly. It is an authority conceded to him—indeed, a duty required of him; and we would refuse to hear a railroad company's effort to plead or prove that it gave no such authority to its conductors or did not charge them with such duties. And such, we believe, should be the rule with respect to brakemen. Even from the proof in this case, if we were to be so confined, we learn that he was to assist in the ejection of persons who had not the right to ride, and, upon the conductor's being engaged in another part of the train, he was to collect fares, and, necessarily, to enforce the regulations of the company to whatever extent the conductor might himself enforce them. We are so fully in accord with the view of the subject taken by the court in Hoffman v. New York Central & Hudson River Railroad Company (87 N. Y., 25), that we quote its language:

"It is conceded that authority in a conductor to remove a trespasser in a lawful manner, whether conferred by the rules or not, is implied, and is incident to his position. We think the same concessions must be made in respect to the authority of a brakeman, who finds a trespasser on the platform of a car. His duties do not primarily pertain to the protection of the cars against intruders; but he is a servant of the company, on the train, concerned in its management, and fully cognizant of the obvious fact that intruders who jump upon the trains for a ride, without intention of becoming passengers, are wrongfully there. Suppose a train was standing still and a trespasser was put off by force by a brakeman, using no unnecessary violence, would it not be a good defense to an action

against him for the assault that he was brakeman, and did the act complained of in that capacity, although without express authority? The implied authority in such a case is an inference from the nature of the business, and its actual daily exercise, according to common observation and experience. But, assuming authority in the conductor or brakeman to remove a trespasser in a lawful manner, the question remains whether, when a conductor or brakeman, without warning or notice of any kind, kicks a boy of eight years from the platform of a car while the train is running at a speed of ten miles an hour, he can be said to be acting within the scope of his employment, so as to make the company liable for the act. Assuming the case made by the plaintiff, the act was flagrant, reckless and illegal; but the point is, was the act within the scope of the employment and authority? . . . In this case the authority to remove the plaintiff from the car was vested in the defendant's servants. The wrong consisted in the time and mode of exercising it." And the company was held responsible. (Same case reported in 41 Am. Rep., 337.)

In this case the brakeman sought to collect the fare from the plaintiff—not for himself, but for the company. Upon his failure to pay, he sought to eject him from the car, not to accomplish his own ends, but to subserve the interests of the company. The company, it is true, owed the plaintiff no duty arising out of a contract. to carry him or to protect him; nevertheless, it might not violate the common instincts of humanity or treat the plaintiff brutally in its process of ejecting him from the car. Undoubtedly when the object of the servant—the end sought to be reached by him—is the intentional or

malicious infliction of an injury upon the person of the trespasser, the company is not liable for his act, and the existence of malice or intentional and willful design is a question of fact to be ascertained from all the circumstances of the case. If the end sought by the employe was the infliction of an injury; if the purpose he had in view when he kicked the plaintiff off the train, if he did kick him off, was to injure him, then the company is not liable, because the act would be malicious and willful. But if the end sought was the ejection of the intruder, if his purpose was devoid of evil design and merely to protect the interest of his employer, then, however careless or reckless the means employed, the company is liable.

The case cited by counsel for the appellee, and said to be directly in point, illustrates the distinction. The plaintiff, a boy, and a trespasser, was driven off the train by a brakeman, who threw coal at him so as to cut and blind him and cause him to slip and fall on the track, whereby he was injured. The company was held not to be liable (Towanda Coal Company v. Heeman, 86 Pa. St. Rep., 418.) So this court, in the case of Winnegar's Administrator v. Central Passenger Railway Company, 85 Ky., 547, said: "If one driving the cars for the corporation should leave the car and beat or abuse one on the sidewalk, the company would not be responsible."

The principle involved and stated by this court in Sherley, &c., v. Billings, 8 Bush, 147, in this language, that "if the servant goes beyond the scope of his employment he is as much a stranger to his master as to any third person, and his acts can in no sense be regarded as the acts of his master," is easy of announcement, but

sometimes difficult of application. In all cases where unnecessary force is used it may be said that the servant acted without authority, express or implied. It can truthfully be claimed in all cases and by all companies that the authority of their servants is limited to the exercise only of force sufficient to eject a trespasser or passenger in a lawful manner.

Nevertheless, the company is liable if the servant, in the exercise of his authority, within the general scope of his employment and in the line of his duty, use unnecessary force, or use it under circumstances, or at a time, when the consequences ordinarily would be seriously injurious to the person ejected.

In this case it does not matter that the act of ejection is charged in the petition as having been done willfully, as well as negligently and carelessly. The willfulness is charged against the defendant company, and for this reason it can not be said that the use of the term willful in itself shows the act to have been malicious on the servant's part, and therefore beyond the scope of his authority. The servant is not charged with committing the act willfully, but the company is charged to have willfully done it by its agent and servant.

The allegation of the answer, that the plaintiff voluntarily swung himself off the train, is not such an affirmative averment as required a reply. The simple issue was presented whether or not the brakeman kicked him off. The statement that he swung himself off is merely in emphasis of the denial that he was kicked off. It is mere surplusage, and, at any rate, is in direct conflict with the averment of the petition that the plaintiff was kicked off, and is, in substance, a denial of that averment. We are

of opinion that the only issues to be submitted to the jury in this case are whether or not the brakeman kicked the plaintiff off of the car, as testified to by the plaintiff, and whether he did so with or without malice or evil design, as indicated above; and upon the determination of these issues depends the question of the company's responsibility for the plaintiff's injury.

Judgment reversed, with directions to proceed as indicated by this opinion.