Chesapeake & Ohio Ry. Co. v. Saulsberry.

CASE 109—ACTION TO RECOVER DAMAGES FOR PERSONAL INJURIES.—
MARCH 7.

# Chesapeake & Ohio Ry. Co. v. Saulsberry.

APPEAL FROM CARTER CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.  REVERSED.

CARRIERS—EJECTION OF DRUNKEN PASSENGER—INJURY AFTER EJEC-
TION—FAILURE TO CARE FOR PERSON INJURED.

Held:    1. A railroad company had the right, by its brakeman, to
eject a drunken passenger who was boisterous and violent, and
therefore incurred no liability therefor; no more force being
used than was necessary.

2. Where a passenger, after being properly ejected, was injured by
his own wrongful conduct in running beside the moving train
with the intention to get on again, the company owed him no
legal obligation to stop the train for the purpose of ascertaining
whether he had been injured.

JOHN T. SHELBY, ATTORNEY FOR APPELLANT.

## PROPOSITIONS AND CITATIONS.

1. Defendant had the right and it was its duty, in view of
the plaintiff's conduct, to put him off the train at Aden:   Ken-
tucky Statutes, sec. 806; L. & N. R. R. Co. v. Logan, 88 Ky.,
232, 239-41; Smith v. L. & N. R. R. Co., 95 Id., 14-15.

2. The plaintiff having been properly ejected, and the acci-
dent having been caused by his own wrongful act in attempting
to get back upon the moving train, even if the defendant was
notified of the accident, it was under no legal obligation to run
the train back to his assistance, and is not liable in damages
for any suffering resulting from plaintiff's exposure until he
was discovered by the next train. Reed v. L. & N. R. R. Co.,
20 Ky. Law Rep., 815 and 990; C. H. & D. R. R. v. Kassen,
49 Ohio St. Rep., 230; Henderson v. L. & N. R. R. Co., 20
Fed. Rep., 431.

3. An instruction authorizing the jury to award such sum in
damages "as they may believe from the evidence will reasonably
compensate the plaintiff" is improper. L. C. & L. R. R. v.
Case's Admr., 9 Bush, 736-7.

4. Elements of compensatory damages for injuries not result-

ing in death. L. C. & L. R. R. v. Case's Admr., 9 Bush, 736-7; Muldraugh's Hill, &c., T. P. Co. v. Maupin, 79 Ky., 105; K. C. R. R. Co. v. Ackley, 87 Id., 283.

5. A minor can not recover for the loss or impairment of his capacity to earn money during his minority, his time belonging to the parent. Shearman and Redfield on Negligence, sec. 760; Covington St. Ry. Co. v. Packer, 9 Bush, 455; L. & N. R. R. Co. v. Willis, 83 Ky., 57; Union News Company v. Morrow, 20 Ky. Law Rep., 302; S. C. & C. St. Ry. Co. v. Herrklotz, Id., 750.

G. W. SAULSBERRY, ATTORNEY FOR APPELLEE.

On October 14, 1898, appellant ran an excursion train from Morehead, Ky., to Huntington, W. Va. and return, on account of a show given at Huntington by "Buffalo Bill," which was extensively advertised by large posters naming the fare at $1 for the round trip, on which appellee was a passenger, paying for the round trip. He was a mere boy, eighteen years old. While at Huntington he got drunk and upon returning at six o'clock p. m. of said date, he and others were on the train, drunk and boisterous, fighting and cursing, almost all the way. Appellee intended to get off at Fireclay, a station just west of his home station, Aden. Between Aden and Fireclay he was ejected from the train because he had passed his home. This was eight o'clock p. m., at night, dark, raining, and rather a cold night, in a side cut, on a sharp curve, with loose stone projecting out of a hill within a few feet of the end of the ties. He was so beastly drunk that he did not know anything from the time he left Catlettsburg until two hours after he received the injury complained of. At the point where he was ejected he was run over by the same train from which he was put off, his left arm crushed so that it had to be amputated to save his life. He was put off by a brakeman who was standing on the steps of the train with a lantern in his hand in plain view of appellee when he fell under the train and who was notified by two passengers that appellee had been run over, but notwithstanding this fact, the train proceeded on its way, leaving appellee lying on the track where he remained for two hours when he regained consciousness, and in an attempt to get up rolled off the track just in time to save himself from being run over by a through freight train which found him and carried him to his home.

Upon hearing the evidence, the jury gave him a verdict for $6,500 from which verdict and judgment thereon, this appeal is prosecuted.

Chesapeake & Ohio Ry. Co. v. Saulsberry.

Appellee contends that just at the time he was ejected, there was no excuse for it, as he was then quiet and this we insist is shown by the evidence, and we claim that a passenger can not be ejected when quiet by reason of having been previously boisterous.

### AUTHORITIES CITED.

Bronson v. Labrot, 81 Ky., 638; Ky. Cent. Ry. Co. v. Gastineau, 83 Ky., 119; Shearman and Redfield on Neg., secs. 99, 114; Spooner v. Delaware, &c. R. R. Co., 115 N. Y., 22; Islands, &c. Casting Co. v. Folsom, 139 U. S., 551-558; Buford v. L. & N. R. R. Co., 82 Ky., 287; C. & O. R. R. Co. v. Lang's Admr., 100 Ky., 221; Fagg's Admr. v. L. & N. R. R. Co., 23 R., 383; Paducah, &c. R. R. Co., Hochl, 12 Bush, 140; Cahill v. C. N. O. & T. P. R. R. Co., 13 R., 718; Thurman v. L. & N. R. R. Co., 17 R., 1343; Haug v. Great Northern R. R., 73 Am. St. Rep., 727; L. & N. R. R. v. Johnson, 108 Ala., 62; L. & N. R. R. Co. v. Sullivan, 81 Ky., 624; S. & R. on Negligence, secs. 493, 458.

OPINION OF THE COURT BY JUDGE BURNAM—REVERSING.

The plaintiff, a minor, by his next friend, alleged "that on the 14th day of October, 1898, the defendant company ran a passenger excursion train from Morehead, Kentucky, to Huntington, West Virginia, and return, at one fare for a round-trip ticket, on account of the show given in Huntington by Buffalo Bill; that he boarded the train at Aden station with a number of other parties, among whom were the defendants, Walter Littleton and Walter James; that upon the return of the train it reached Aden about 8:20 p. m., after dark, and that he was so intoxicated from the use of liquors from the time he left Huntington that he was insensible to danger and did not realize what he was doing, which fact was well known to the defendants; that when in this condition the train was stopped, and he was ejected therefrom, about a quarter of a mile west of Aden station, at a very rough place on the defendant's roadbed, by the defendants Littleton and James and a brakeman in

the employ of the defendant company, who was in charge of the car, and put by the side of the train, in such close prox-imity to it that he fell under it, and when the train started the wheels of the car ran over and crushed his left arm necessitating its amputation, and that the defendant com-pany knew of his injuries, but proceeded on its way, leaving him lying by the side of the track in a helpless and almost lifeless condition, exposed to the weather and passing trains; and that he continued in this condition for a period of two hours and twenty minutes, until he was picked up by a freight train of the defendant company and carried to his home near the station." The defendant company says that, on the occasion mentioned in the petition, the plaintiff, who was a passenger on its train, was drunk, disorderly, and be-having very badly; that when the train reached Aden on its return trip, near which station the plaintiff lived, the defend-ants James and Littleton, who were his friends and com-panions, caused the plaintiff to leave the train and put him in charge of friends, but that when the train started for Aden the plaintiff broke loose from his friends, who were at-tempting to detain him, and boarded the train at its rear end, and in the hearing and presence of other passengers used profane and threatening language, and behaved in such a riotous manner that its codefendants, James and Littleton, again attempted to make him get off; that its brakeman, seeing their efforts, caused the train to be stopped a short distance from Aden station, and, at the request of James and Littleton, assisted them in removing the plaintiff from the train at its rear end, and in so doing used no more force than was necessary, and placed him upon the ground at the rear of the train, where he was in a perfectly safe position; that, when he was again prevented from boarding the train by Littleton and James at the rear end of the car, he ran

along the side of the train after it had started, for the pur-
pose of boarding the car at the other end, and whilst so
doing, without their knowledge, stumbled and fell so that
his arm projected over the railroad track, and was run over
by the wheels of the car; that his injuries were entirely
due to his own carelessness and negligence. It also denies
that it had any knowledge of his injuries at the time. The
plaintiff, who was 18 years of age, testified that he went
with Walter Littleton to a saloon after getting to Hunt-
ington, where he spent the day drinking; that when they
returned to the station at Huntington, in the afternoon, for
the purpose of boarding the train, they met Walker James,
and the three got on the train together; that he was so in-
toxicated that he had no recollection of anything that oc-
curred after the train left Catlettsburg, until a few min-
utes before he was picked up by the freight train on the
side of the road near Aden station. The uncontradicted
testimony shows that, from the time the train left Hunting-
ton until its arrival at Aden station, he was passing through
the train, from one car to another, and from one place to
another on the cars, indulging in loud and profane language
and frequent altercations with the other passengers; that
when the train reached Aden station, about 8 o'clock in
the evening, his friends, James and Littleton, got him off
the train, and that a lady friend caught hold of him and
endeavored to prevent him from getting back on the train,
but that as it moved off he broke loose from her and jumped
on the platform of the rear car, and said in a loud voice
that he wanted to find "the damn son of a bitch who had
the hatchet;" that James and Littleton took hold of him
and attempted to restrain him, and that whilst they were
doing so the defendant's brakeman stopped the train, which
had not gotten fully under way, and assisted them to again

Chesapeake & Ohio Ry. Co. v. Saulsberry.

get him off some four or five hundred yards from the sta-
tion; that plaintiff was placed on the ground by the side of
the rear platform of the last car, in a perfectly safe place;
and that, as the train started to move off, he ran long the
side of the car for the purpose of boarding it at the other
end, and when so doing stumbled and fell, his arm falling
across the rail, and it was run over and crushed.  A pass-
enger who was looking out of the window saw him fall, and,
when the brakeman came through the car, told him that the
plaintiff had fallen under the train; and he testifies that
the brakeman responded that he did not think so, as he saw
him in a ditch at the side of the track when the train started.
There is nothing to show that the place where the plaintiff
was put off was dangerous.  At the conclusion of the evi-
dence, the defendant asked the court to direct the jury to
return a verdict in its favor, which was refused, and
the court said:  "The uncontradicted testimony in this case
is that this young man was drunk, boisterous, and violent;
that he was put off the train at Aden, his home, from which
point he started, and from which he bought his ticket, by
his friends.  The railroad company did not participate in
that action at all.  He succeeded in evading the vigilance
of his friends, and got back on board.  Whilst passing
through the coach, looking for the individual that had the
hatchet, James and Littleton took hold of him and pulled
him into a seat.  About that time the brakeman came along
and said, 'I will put him off.'  And he and the other defend-
ants took hold of him and put him off the train, from the
rear end of the rear coach, and he pursued the train, and in
following it, and in attempting to board same, he fell to
the west, whilst running in that direction, and the wheels
ran over his arm and crushed it.  Up to that time he was
guilty of such contributory negligence as would deprive

him of his rights to recover, but when they ran over him, and the attention of the brakeman was called to that fact, he refused to stop the train. I think it was their duty to stop and take him up, and they were negligent in their refusal to do so, and he is entitled to recover for the suffering he endured by reason of his exposure after he was run over, for some two hours." The trial resulted in a verdict and judgment for $6,500 in favor of the plaintiff, and to reverse that judgment this appeal is prosecuted.

Section 806 of the Kentucky Statutes provides that "if any person whilst riding on a passenger or other train shall, in the hearing or presence of other passengers and to their annoyance, use or utter obscene or profane language, or behave in a boisterous or riotous manner, it shall be the duty of the conductor in charge of any train upon which such person is to put him off the train, or to give notice of such violation to some peace officer at the first stopping place where any such officer may be." Whilst the plaintiff testifies that he was totally unconscious of what he was doing from the time the train left Catlettsburg until he was picked up upon the side of the track by a freight train, the other testimony does not bear out his statement in this respect. He was sober enough to continually pass through the train, to resist the efforts of his friends to put him off at his home station, and to get back on the train after it had started; and his conduct from the time he boarded that train at Huntington would have justified those in charge of the train in ejecting him therefrom, and the company would not have been liable for any injury which might result therefrom, provided no more force was used in doing it than was reasonably necessary; and this rule applies to an intoxicated person, although he may not be able to take care of himself In Railroad Co. v. Logan, 88 Ky., 239 (10 R., 798) 10 S. W.,

655, 3 L. R. A., 80, 21 Am. St. Rep., 332, this court said: "In every situation and relation, an intoxicated person, like others, should be held to the strict observance of the just and salutary rule which requires each one to so use and en- joy his own as not to injure others. It thus becomes law- ful for a landlord to expel from his tavern to the street or highway, at any time, a person who, whether intoxicated or not, endangers the safety of, or molests and insults, his guests; and no one would question the right of a house- keeper to eject from his domicile a drunken man who mal- treats or offends, by indecent conduct or language, his wife and children, provided no more force be used for the pur- pose in either case than was reasonably necessary. Such being a rule of conduct recognized as just and necessary, we do not see why it ought not to be applied, upon the same conditions, for the benefit and protection of passengers on a railroad train, nor why they should be given the right to maintain an action against a railroad company for suffering them to be molested, put in fear, and insulted on a train by drunken men, while denying the company the right, ex- cept at his peril, to resort to the only feasible means in its power to prevent or stop the wrong being done. Common justice would seem to require either that passengers be left without redress against the company for wrong and injury done to them on trains by disorderly and vicious persons, or else that no liability attach or negligence be imputed to the company when the expulsion of the latter is rendered necessary for the safety and protection of the former." And in Smith v. Railroad Co., 95 Ky., 11 (15 R., 390) (23 S. W., 652, 22 L. R. A., 72), the rule laid down in the Logan case was approved, and the right and duty of the conductor as to a drunken passenger was reaffirmed, and the statute held to be applicable to a brakeman as well. The court said:

Chesapeake & Ohio Ry. Co. v. Saulsberry.

"Now that, knowing it to be held universally that a conductor, using no unnecessary force, may remove from the car persons who are drunk, riotous, or unruly, it is an authority conceded to him, indeed, a duty required of him; and we would refuse to hear a railroad company's efforts to plead or prove that it gave no such authority to its conductors, or did not charge them with such duties; and such, we believe, should be the rule with respect to brakeman."

It seems clear from these authorities that plaintiff was properly ejected from the train, and we think there can be no doubt that his injuries were caused by his own wrongful conduct in running beside the moving train with the intention of attempting to get on board of it. The remaining question to be considered is, therefore, whether the railroad company, under the circumstances, was under legal obligations to stop its trains for the purpose of determining whether plaintiff had been injured, and, if so, to have again taken charge of him.   Our attention has not been directed to a case in which this precise question has been passed upon.   In Reed v. Railroad Co., (104 Ky., 603) (20 R., 815, 990) (47 S. W., 591, 44 L. R. A., 823), the plaintiff was a passenger upon one of the defendant's trains, standing outside of the car, upon the platform, and, in passing over a high trestle, fell a distance of 40 or 50 feet to the ground below, and was greatly injured.   The defendant knew of the accident, but failed to go to his assistance, and the suit was to recover damages on the ground that the defendant was guilty of negligence in failing to stop the train and care for him.   In that case it was held:   "The obligation on the railroad to stop its train and rescue the plaintiff was wholly subordinate to its obligation to its other passengers; and, before the plaintiff could complain of the company's failure to assist him, he must allege facts showing that such as-

sistance could have been rendered without endangering the safety of other passengers or property committed to its care." In that case the plaintiff was a passenger on the defendant's train, whilst in this case this relation had ceased to exist. The plaintiff had been carried to his destination, and had been put off the train by his friends at the place where his ticket expired, and where his home was. The accident was due to the plaintiff's wrongful act in running along the side of the car in the night ,and in attempting to get back upon the moving train. Under these circumstances, we are of the opinion that there was no legal obligation resting upon the appellant company to have stopped its train for the purpose of ascertaining whether the plaintiff had been injured. The hazard of the business in which it was engaged precluded it from playing the part of the Good Samaritan to one with whom it had no contractual relation, and to whom it was under no legal obligation.

For the reasons indicated, we are of the opinion that the trial court erred in overruling the motion for a peremptory instruction, and the judgment is reversed, and the cause remanded for proceedings consistent with this opinion.

Petition for rehearing by appellee overruled.