CASE 74.—ACTION BY OTTO WILLIS BY NEXT FRIEND AGAINST THE MAYSVILLE & BIG SANDY R. R. Co., FOR DAMAGES FOR PERSONAL INJURIES.— April 24.

## Willis by, &c. v. Maysville & B. S. R. R. Co., &c.

Appeal from Greenup Circuit Court.

JAMES P. HARBESON, Circuit Judge.

Judgment for defendants. Plaintiff appeals. Reversed.

1. Railroads—Action for Personal Injury—Negligence of Brakeman—Scope of His Authority—Question for Jury—In an Action for personal injuries by one who was injured while on a street by a brakeman of a railroad train kicking a piece of ice out of the caboose as the train passed the street, where there was some evidence from which the jury might have reasonably inferred that the brakeman was at the time acting within the scope of his authority, the case should have gone to the jury.

Willis by &c., v. Maysville & B. S. R. R. Co., &c.

2. Contributory Negligence—Standing in Street—Passing Train—
   Anticipating Danger—It is not negligence in an infant in
   merely standing in the street at a point where there was
   no danger of being struck by a passing train, and he is not
   required to anticipate that persons connected with the train
   would throw large lumps of ice from it as it passed along,
   and in such case there is no evidence of contributory
   negligence on his part.
3. Appeals—Motion to Dismiss—While it is true that an appeal
   will not lie from a mere judgment for costs, where appel-
   lant's action for damages was dismissed and his motion
   for a new trial overruled denying him any relief, the motion
   to dismiss his appeal is without merit.

ALLAN D. COLE for appellant.

W. T. COLE of counsel.

1. The motions for peremptory instructions in this case were
sustained in flagrant disregard of this court's mandate · and
opinion herein.

2. The evidence having shown conclusively that the brakeman
in question by reason of his intimate acquaintance with the
streets and ground along the railroad must· have known of the
danger in kicking off a lump of ice at a crossing where people are
accustomed to congregate, instead of putting it off twenty-five
yards east of the crossing the case therefore presents clearly
the question of gross negligence, and hence it is insisted that
instead of peremptory instructions, the lower ·court should have
given the instructions asked for by appellant, and should not have
willfully disregarded the-plain direction of this court as expressed
in its mandate and opinion.

## AUTHORITIES CITED.

Courtney v. Baker, etc., 60 N. Y., 1; Thompson on Negligence,
vol. 1, sec.· 615; Hussey v. Norfolk·Southern R. R. Co., 2 Am.
St. Rep., 315; Pierce on Railroads, sec. 279; St. L. I. M. & S.
Ry. Co. v. Hendricks, 3 Am. St. Rep., 222; Cohan Dry Dock
Co., 69 N. Y., 170; Ritchie v. Waller, 38 Am. St. Rep., 366; What-
man v. Pearson, L. R. 3 Com. P., 422; Pollock on Torts, p. 71;
Kimball v. Cushman, 103 Mass., 194; 4 Am. Rep., 528; Redding
v. South Carolina R. R. Co., 3 S. C.,1; 16 Am. Rep., 681; Rounds
v. Delaware, &c., R. R. Co., 64 N. Y., 129; 21 Am. Rep., 597;

Comack v. Digby, 9 I. R. C. L., 597; Burns v. Poulson, L. R., 8 Com. P., 563; Nelson Business College Co. v. Lloyd, 71 Am. St. Rep., 735; Jackson v. Second Ave. R. R. Co., 47 N. Y., 274, 7 Am. Rep., 448; Bergman v. Hendrickson, 80 Am. St. Rep., 48; Craker v. Chicago, &c., Ry. Co., 36 Wis., 657; 17 Am. Rep., 504; Scharfer v. Pstrabrink, 67 Wis., 495, 58 Am. Rep., 875; 30 N. W., 922; Rogahn v. Moore, ete., Co., 79 Wis., 573; 48 N. W., 669; Reinke v. Bentley, 90 Wis., 457, 63 N. W., 1055; Bryan v. Adler, 97 Wis., 12, 65 Am. St. Rep., 99, 72 N. W., 368; Philadelphia & Reading R. R. Co. v. Derby, 14 How., 487; Singer Mfg. Co. v. Rahn, 132 U. S., 529; Baltimore Consolidated R. R. Co. v. Pierce, 45 L. R. A., 530; Cleveland v. Newsom, 45 Mich., 63; Polatty v. Charleston, &c., Ry. Co., 100 Am. St. Rep., 755; Smith v. Middleton, 112 Ky., 588; Hawkins v. Riley, 17 B. M., 146.

W. H. WADSWORTH for appellees.

### CITATION OF POINTS AND AUTHORITIES.

1. The appeal should be dismissed because the record presents no appealable judgment. (Civil Code, sec. 734; Briscoe v. Briscoe, 11 Ky., (1 Litt.) 363; Norton v. Sanders, 26 Ky., (3 J. J. Mar.) 396; Rucker v. Pritchett, 3 Bush, 689.)

2. The peremptory instruction was correct.

(a) The record shows contributory negligence but for which the accident would not have happened. (Brown's Adm'r v. L. & N. R. Co., 97 Ky., 228.)

(b) The evidence conclusively shows the servant was not acting within the scope of his authority. (K. C. R. Co. v. Talbot etc., 78 Ky., 621; Owens v. Meredith, 78 S. W., 145; Smith v. R. R. Co., 95 Ky., 14; Sullivan v. L. & N. R. Co., 74 S. W., 171; L. & N. R. Co. v. Routt, 76 S. W., 513; Louisville Water Co. v. Phillips, 89 S. W., 700; McGhee v. Guyn, 98 Ky., 209.)

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This case is before us on a second appeal. On each of the two trials in the circuit court the jury found for appellees in obedience to a peremptory instruction from the trial judge to that effect. The facts of the case are fully set forth in the opinion of this court

on the former appeal (Willis v. M. & B. Sandy R. R. Co., 85 S. W., 716; 27 Ky. Law Rep., 459), and need not be repeated, except to say that the action was brought by appellant, an infant, and his next friend, to recover of appellees damages for injuries sustained by the infant to his person inflicted by a lump of ice that fell or was thrown upon him by one of appellee Chesapeake & Ohio Railway Company's freight trains as it passed through the town of Greenup and over a street thereof, in which appellant was at the time standing or walking near the railroad track. There was no doubt of appellant's right to be on and use the street, as it was a public street and was so used by the public generally.

The defense presented by the answer of appellees and now relied on is that those in charge of the train did not at the time and place of the accident owe appellant any duty; that the brakeman by whose act the ice was thrown from the train was not in the performance of or discharging any duty for appellee, or that appertained to his employment, or the apparent scope thereof; and, finally, that appellant in receiving his injuries was himself guilty of contributory negligence, but for which he would not have been injured. In the former opinion it is said: "The boy, in common with the public, had the right to use the street. Under the law enunciated by this court, there is a duty imposed upon those operating trains through towns to keep a lookout for persons upon streets, and especially at street crossings. It certainly would be negligence in a railroad company to have its agents and servants throwing substances from a train into the streets as it passes along or across them. If the agents or servants do so by

authority of the master, and an injury is inflicted on persons using the street, it would be an actionable wrong. It is the duty of railroad companies to exercise proper care so as to avoid injuring persons on streets of towns over which they pass. A failure to observe such care is certainly a breach of duty.'' We fail to find in the evidence any proof that appellant was swinging on the train at the time he was injured; nor do we find that there was any testimony to authorize the inference that he was then about to swing on the train. Indeed, according to the evidence, he was not, though only a few feet away, close enough to the train to have enabled him to do so. By the former opinion it was held that the infant appellant was not negligent in merely standing in the street at a point where there was no danger of being struck by the train, and that he was not required to anticipate that persons connected with the train would throw large lumps of ice from it as it passed across the street. We now adhere to that conclusion, for a careful examination of the record convinces us that the evidence on the two trials as to the conduct and position of appellant with respect to the train was practically the same. We are therefore of opinion that there was no evidence of contributory negligence on his part.

With respect to the question as to whether appellee's brakeman was guilty of negligence in throwing or causing the ice to fall from the train, the former opinion has this to say: ''It is a matter of common knowledge that property is transported on freight trains. The evidence excludes the idea that the brakeman intentionally hurled the cake of ice from the train to injure the boy. It is possible that the ice

was being carried for the train crew or without compensation, and, as an easy means to discharge it, it was thrown from the train at its destination. It is not essential, for the plaintiff to make out his case, to prove that the lump of ice was placed on the car with the knowledge of the master, or that it was thrown from the train with his knowledge or direction. The case is sufficiently made out if a reasonable inference might be drawn from the facts that the servant was acting within the scope of his authority.   *   *   * We are of opinion that the evidence was sufficient to warrant the submission of the case to the jury.'' We are unable to see that the evidence adduced upon the last trial will authorize a departure from the foregoing conclusion, as, already said, it was substantially the same as that of the first trial, except that appellee's brakeman, Truett, who did not testify on the first trial, was a witness in the last. He testified, in substance, that it was his duty as a rear brakeman of the train to look over the train and see that it was in proper order; that, noticing the door of a refrigerator car attached to the train open, he went to close it, and found in the car some abandoned ice, four pieces of which he took to the caboose to make ice water for the use of the train crew, that he put three lumps of ice in a 16-gallon water keg in the caboose, and left the fourth piece on the rear platform of the caboose, and that upon reaching Riverton he found the ice had melted considerably, and made the caboose platform wet and slippery. Thinking it unnecessary to let the ice waste, he concluded to give it to Timberlake, a section hand of appellee, whom he saw standing by a fence in Greenup, and for that purpose stepped to

the rear platform of the caboose, and standing on the first step thereof, attempted with his left foot to pull the ice out to the edge of the platform, in order that he might pick it up, and, after passing the cattle guard, threw it off the train on soft ground to prevent its breaking; but that, in moving the ice with his foot to the edge of the platform, it slipped, or, to use his language, "shot off," to the street below and struck appellant. It further appears from the testimony of Truett that he was well acquainted with the streets of Greenup over and along which trains passed, and it must therefore be presumed that he knew, at the time of moving the ice on the platform of the car, the train was on or near the street, and of the danger to those on the street from objects that might be thrown or fall thereon from a passing train. The witness ventured the opinion that the two refrigerator cars attached to the train did not belong to appellee company; but he did not seem to be positive that this was true, as he had never seen a contract between the shipper and the company.

The question here presented is, was the brakeman, in removing the ice from the caboose platform, acting in the performance of a duty arising from his employment, or the apparent scope thereof? If he was, and his act in ridding the train of the ice was so negligently performed as to result in injury to appellant, appellee would be liable therefor. It is usually a matter of some difficulty to determine what acts of an agent are or are not within the apparent scope of his agency of employment, for which reason courts generally hold that the question is one of fact, to be determined by a jury. We find the rule thus stated in Thompson on Negligence: "It is obviously a

question of fact for the determination of the jury whether, at the time of the particular act or omission by the servant which caused the injury, the plaintiff's servant was acting within the scope of his employment, or acting outside of it to effect some purpose of his own.'' This doctrine is so universally recognized that a citation of further authority in support of it is deemed unnecessary.

It appears from the testimony of the brakeman, Truett, that it was his duty to provide the train crew with ice water, and though without express authority to get the ice for that purpose from the refrigerator car, the fact that it had been abandoned, and left to melt and waste by the owner—if owned by another than appellee Chesapeake & Ohio Railway Company —did not make it improper for the brakeman to appropriate it to the use of the train crew, or remove the act of his doing so without the scope of his employment. Besides, if, as he stated, it was his duty "to look over the train and see that the train was in proper order," did not such duty require him to remove abandoned or refuse matter from the refrigerator car, as from any other part of train. It is not wide of the mark to say that the duty required of the brakeman "to look over the train and see that the train was in proper order" authorized him to remove from the platform of the caboose the lump of ice left after supplying the water keg; for a lump of ice weighing from 20 to 50 pounds was an obstruction to the use of the platform by the train crew in entering or leaving the caboose, and by melting it was calculated to make the platform wet and slippery, and by reason thereof less safe for use. Manifestly his purpose in getting the ice from the refrigerator

car was not to give it to his friend Timberlake. If such had been his purpose, and in carrying it out, by throwing it to the latter from the car, appellant had been injured, it might with greater reason be argued that neither in getting the ice from the refrigerator car, nor in throwing it from the car to Timberlake, was he acting for the master; but such was not his purpose. The ice was obtained by the brakeman for the use of the train crew, and the idea of giving it to Timberlake was an afterthought, which in fact first occurred to him when he saw Timberlake standing near the track as the train passed through Greenup, and this was after he had supplied the train crew with ice water, and placed the superfluous piece of ice on the platform of the caboose. There being some evidence to justify the inference that it was as much his duty under the circumstances to remove the ice from the caboose platform as it was to supply the crew with ice water, we fail to see that the mere act of giving it to his friend, instead of allowing it to waste by the roadway, should be taken as altering his relations with the railroad company as agent.

The case should have gone to the jury, for there was some evidence from which they might have reasonably inferred that the brakeman, Truett, was, at the time appellant received his injuries, acting within the scope of his authority. Moreover, it was their province to determine from the evidence whether or not, in removing the ice on the platform with his feet, whereby it was caused to fall to the street and strike appellant, instead of taking it in his hands and throwing it to the ground, before or after the car passed the street, the brakeman was guilty of negligence; and there was also some evidence

tending to prove such negligence on his part. We do not think the cases of Smith v. L. & N. R. R. Co., 95 Ky., 15; 15 Ky. Law Rep., 390; 23 S. W., 652; 22 L. R. A., 72, and Sullivan v. L. & N. R. R. Co., 115 Ky., 447; 24 Ky. Law Rep., 2344; 74 S. W., 171; 103 Am. St. Rep., 330, are in conflict with the views expressed in this opinion. These cases merely hold, as we here concede, that the master is not liable for the negligent or wrongful act of the servant when the latter steps aside from his employment and assumes to act and does act solely on his own account in a matter with which the master has no connection. But we do not think this principle applicable to the facts of the case at bar, for, according to the brakeman's own testimony that it was his duty to look after the train and see that it was kept in order, his acts in providing for the comfort of the train crew, placing the surplus ice on the car platform to prevent its melting within, and in removing it as an obstruction from the platform, all appertained to his employment and were within the apparent scope thereof. This view of the matter constrains us to hold that the peremptory instruction should not have been given.

It is contended by counsel for appellees that the judgment complained of is not one from which an appeal will lie, as it is only a judgment for costs. It appears from the record that, instead of entering judgment upon the verdict of the jury, containing the recital that by reason thereof the petition was dismissed and appellees allowed costs, the judgment entered was only for appellees' costs. However, by separate orders the giving of the peremptory instruction and return of the verdict in fovar of each appellee are shown, and by yet another order it is

also shown that appellants' motion for a new trial was overruled, and an appeal prayed and granted. It is true that an appeal will not lie from a mere judgment for costs; but the various orders and judgments referred to, when considered together, show that this case was finally disposed of. "A final order either terminates the action itself, decides some matter litigated by the parties, or operates to divest some right in such a manner as to put it out of the power of the court making the order, after the expiration of the term, to place the parties in their original condition." M. & L. Ry. Co. v. Punnett, 15 B. Mon., 48. "No technical form is required to constitute an appealable judgment or decree. Its effect determines its appealability; and, if it concludes the litigation in the trial court, it is sufficient." Ency. Pld. & Prac., Vol. 2, p. 64.

We think the contention of appellees that an appeal does not lie in this case is fully answered by the authorities supra. If the judgment in favor of appellees for costs is not a final order, that and the subsequent order of the lower court overruling the motion of appellants for a new trial, and denying them further relief, should together be treated as such. The motion to dismiss the appeal is, in our opinion, without merit.

Judgment reversed, and cause remanded for a new trial and further necessary proceedings consistent with the opinion.

Petition for rehearing by appellee overruled.