RANDALL *v.* CHICAGO & GRAND TRUNK RAILWAY CO.

1. MASTER AND SERVANT—LIABILITY OF MASTER TO THIRD PERSONS
   —BURDEN OF PROOF.
   In an action to recover for injuries inflicted by defendant's
   servant, the plaintiff has the burden of proving that the act
   complained of was within the scope of the servant's employ-
   ment.

2. RAILROAD COMPANIES—EJECTION OF TRESPASSER FROM TRAIN—
   AUTHORITY OF BRAKEMAN.
   A brakeman on a freight train has no implied authority to
   eject trespassers. MONTGOMERY, J., dissenting.

3. SAME—RULES OF COMPANY.
   The fact that the rules of a railroad company prohibit the car-
   rying of passengers upon freight trains, and that brakemen
   are required to familiarize themselves with the rules of the
   company, does not establish the authority of a brakeman
   upon such a train to eject one who boards the same for the
   purpose of taking passage thereon, where the rules further
   provide that brakemen shall be under the orders of the con-
   ductor. MONTGOMERY, J., dissenting.

Error to Eaton; Smith, J.   Submitted January 7, 1897.
Decided May 28, 1897.

Case by William A. Randall against the Chicago &
Grand Trunk Railway Company for personal injuries.
From a judgment for plaintiff, defendant brings error.
Reversed.

*Geer & Williams* (*E. W. Meddaugh,* of counsel), for
appellant.

*Powers & Stine,* for appellee.

LONG, C. J.   This action was brought to recover dam-
ages for injuries claimed to have been sustained by plain-
tiff by being compelled by a brakeman to jump from a

freight train, while in motion, belonging to defendant. The injury occurred March 19, 1894. The plaintiff, without permission of the defendant, got upon one of defendant's freight trains at Charlotte, this State. When the train arrived near Olivet Hill, plaintiff was discovered by one of defendant's brakemen between two cars, holding onto the projecting iron at the end of the car. Plaintiff claims that, while the train was running at a high rate of speed, he saw the brakeman, and climbed around upon the side of the car, taking hold of the ladder which is used to climb onto the car. The brakeman then commenced pouring black oil upon him, and said, "Are you going to get off from here?" That his hands got so slippery from the oil that he could not hold on longer, when he jumped off, and was severely injured.

On the trial the court instructed the jury:

"If you believe from the evidence that the brakeman of defendant's train commenced pouring oil upon the plaintiff while he was riding upon the car, and continued to pour oil upon him until his hands became so slippery from the oil that he could hold on no longer with safety, and that it was safer for him to jump than it would be to attempt to remain hanging to the train, and he did so jump, and was injured thereby, your verdict must be for the plaintiff."

There was verdict and judgment for plaintiff.

It appeared upon the trial that this was a through freight train, not authorized to carry passengers without special permit from the officers of the company. The company had printed rules. Certain of those rules were printed upon cards and hung in the way stations. Upon one in the station at Charlotte the following rule was printed:

"Passengers will not be carried under any circumstances upon any freight train, except such as are designated and between points named upon the time-table; nor will they be carried upon such freight trains unless provided with freight-train permits."

This was not one of the trains named upon the time-table, and the plaintiff had no permit to ride thereon. He was a trespasser in getting upon the train. He had no right there. By rule 172 of the company it is provided, "Brakemen are under the orders of the conductor;" and by rule 170 it is also provided, "Brakemen must make themselves thoroughly acquainted with the whole code of signals and the instructions referred to in these rules and regulations, as well as those embodied in the said time-table." At the close of the testimony, counsel for defendant requested the court to charge the jury that their verdict must be for the defendant. This was refused, and the question was submitted to the jury for their determination as one of fact.

Counsel for plaintiff contend that the record shows that the brakeman had the authority to remove the plaintiff from the train, and having exercised that authority in a cruel and unjustifiable manner, by means of which the plaintiff was injured, a right of action exists against the defendant company. This contention is based upon the rules of the company, which were put in evidence. The claim is made that inasmuch as the rules provided that this class of trains should not carry passengers, and the brakemen of the defendant company were required to familiarize themselves with those rules, the brakeman must have known that it was his duty, and that he was authorized by the company, to eject the plaintiff from this train, and that in ejecting him he was in the discharge of a duty which the company had imposed upon him. On the other hand, it is contended by counsel for defendant that, under rule 172, brakemen of freight trains are subject at all times to the orders of the conductors of the trains; that the rules nowhere imply that a brakeman has authority to eject, or that the company has placed upon the brakemen the duty of ejecting, even trespassers from freight trains, but that they are subject to the orders of the conductors of such trains; and that in the present case the brakeman is not shown to have received any

such orders, and that, therefore, his act in ejecting the plaintiff was not the act of the defendant company; that it became necessary, in order to entitle plaintiff to recover, that he should prove, not only that he was injured because of the wrongful act of the brakeman, but also that the brakeman was acting within the scope of his employment, and in the line of his duty, in causing plaintiff to jump off. In other words, that he must show that the brakeman inflicting the injury possessed the authority to do the act which resulted in the injury. It is conceded that there is no proof in that regard, unless the rules of the company are to be construed as contended by counsel for plaintiff.

We think the rules cannot be so construed. It is true that passengers are not permitted to ride upon this class of freight trains, and that brakemen are required to familiarize themselves with these rules; but under rule 172 the brakemen must take their orders from the conductor. There is consequently no proof in the case that the brakeman here had authority from the company to do the act complained of. The burden was upon the plaintiff to show such authority. In *Corcoran* v. *Railroad Co.*, 6 C. C. A. 231, 56 Fed. 1015, it appeared that plaintiff was riding on top of a freight car without having paid any fare; that he was ordered off by a person whom he assumed to be a brakeman; that the brakeman seized him and threw him off while the train was in rapid motion, whereby he was injured. The court directed a verdict in favor of defendant, and the court of appeals affirmed the ruling, saying:

"The court is of the opinion that plaintiff should have offered some evidence showing the scope of the alleged brakeman's authority. He failed to do so, and for that reason the judgment must be affirmed."

In *Pennsylvania Co.* v. *Dean,* 92 Ind. 459, 462, it was said:

"But if the appellee was on the train without right, being a mere trespasser, the fact that the injury was occasioned by the negligent or unlawful acts of the appellant's employés would not make the appellant liable, unless it further appeared that the acts complained of occurred within the scope of the servants' employment."

In *Towanda Coal Co.* v. *Heeman,* 86 Pa. St. 418, the plaintiff, a small boy, climbed upon the cars of defendant. After the train had started, he was seen by one of the brakemen, who threw some pieces of coal, which struck the boy in the face, in consequence of which he slipped and fell in trying to get off the car. There was no evidence given of the authority of the brakeman to eject trespassers from the train, and the defendant asked an instruction that a verdict be rendered in its favor on this ground. This the court refused, but submitted the question to the jury to determine whether the brakeman was acting within the scope of his employment. The case was appealed, and it was said by the appellate court:

"A careful examination of all the testimony has shown that not a word contained in it tended to prove that the brakeman whose conduct is complained of, in the cruel and wanton assault he made on the plaintiff, was acting in pursuance of any authority conferred on him. The only affirmative proof was precisely in the opposite direction. * * * Upon the facts developed on the trial, although the plaintiff had no right to be on the cars, the jury would have been justified in finding, as they did, such reckless, gross, and culpable negligence as to render the defendant liable for damages, if the brakeman had been shown to have been acting in the line of his duty and within the scope of his employment. With no evidence that he was so acting, and with the testimony of the assistant superintendent to the contrary, it was a mistake to submit the question whether the wrongful act was or was not done in the exercise of a duly-delegated authority."

The following cases sustain this rule: *International, etc., R. Co.* v. *Anderson,* 82 Tex. 516; *Texas, etc., R. Co.* v. *Moody,* (Tex. Civ. App.) 23 S. W. 41; *Bess* v. *Railroad Co.,* 35 W. Va. 492 (29 Am. St. Rep. 820);

*Lake Shore, etc., R. Co.* v. *Peterson,* 144 Ind. 214; *Farber* v. *Railway Co.,* 116 Mo. 81.  Under the rule laid down in these cases, the defendant was entitled to have its request given that a verdict be rendered in its favor.

The judgment must be reversed.  No new trial will be ordered.

GRANT and MOORE, JJ., concurred with LONG, C. J. HOOKER, J., did not sit.

MONTGOMERY, J. (*dissenting*).  There is a conflict in the authorities upon the question presented in this case, namely, whether a brakeman on a freight train has implied authority to eject a trespasser.  On principle, I am of opinion that such authority is to be implied from the nature of his employment.  In the present case it was shown that the rules of the company prohibited the carrying of passengers upon the train in question, and it was shown that it was by another rule provided that it was the duty of the brakemen of the company to familiarize themselves with all its rules.  In Patt. Ry. Acc. Law, § 111, it is said to be the doctrine of most of the cases that when a railway servant is put in charge of any of the property of the railway, as a station master in charge of a station, or a conductor in charge of a train, or an engine driver or fireman in charge of an engine, or a brakeman in charge of a car, that servant is necessarily charged with the duty of protecting that particular property, and he is therefore, for that purpose, vested with an implied authority to remove trespassers therefrom. This doctrine is approved in *Brevig* v. *Railway Co.,* 64 Minn. 168, 172, where it is said that: "The duties of a freight-train brakeman do not consist merely of turning the brakes.  By universal custom, he has police duties as to the cars immediately under his charge."

It was said in *Hoffman* v. *Railroad Co.,* 87 N. Y. 25, 30 (41 Am. Rep. 337), speaking of the brakeman:

'' His duties do not primarily pertain to the protection of the cars against intruders; but he is a servant of the company on the train, concerned in its management, and fully cognizant of the obvious fact that intruders, who jump upon the train for a ride, without intention of becoming passengers, are wrongfully there."

See, also, *St. Louis, etc., R. Co.* v. *Reagan*, 52 Ill. App. 488; *Vertrees' Adm'r* v. *Railway Co.*, 95 Ky. 314; *Houston, etc., R. Co.* v. *Bolling*, 59 Ark. 395; *Kansas City, etc., R. Co.* v. *Kelly*, 36 Kan. 655 (59 Am. Rep. 596); *Smith* v. *Railroad Co.*, 95 Ky. 11.

A distinction was attempted to be drawn on the argument between a freight train and a passenger train, favorable to the defendant's contention. In my opinion, the authority of the freight brakeman is quite as clear as would be that of a passenger brakeman. It may be said with some force that, before the brakeman would have implied authority to eject an apparent trespasser from a passenger train, the conductor should be consulted, for the reason that it is the conductor who is to determine who are authorized to ride upon the train, while in the case of a freight train not carrying passengers it is at once apparent to the brakeman that a stranger boarding the train is a trespasser.