DALEY, Respondent, vs. CHICAGO & NORTHWESTERN RAIL-
WAY COMPANY, Appellant.

*February 3—February 21, 1911.*

*Railroads: Ejection of trespasser from train: Excessive force: Liabil-
ity: Authority of baggageman: Scope of employment: Questions
for jury.*

1. From the fact that a servant is intrusted with the charge of a ve-
hicle for certain purposes a jury may infer that he is authorized
to exclude therefrom trespassers or persons endeavoring unlaw-
fully to use the vehicle for other purposes.
2. Although the authority to eject trespassers from a train be vested
in the conductor, yet if by the rules the baggageman has charge
of the baggage in a car and it is his duty to report to the con-
ductor the presence of trespassers on said car and, when re-
quested by the conductor, to aid in ejecting them, such baggage-
man may be found by the jury to have been acting within the
scope of his employment in endeavoring to eject a trespasser
from the baggage car without calling upon the conductor.
3. If in such case the baggageman use unnecessary or excessive force
his employer is liable.
4. Authority given to a conductor to eject from his train any passen-
ger who refuses to produce a proper ticket or pass or to pay
fare includes authority to eject a trespasser who makes a like
refusal.
5. One who attempts to ride on a train without ticket, pass, or pay-
ment is ordinarily a trespasser.

APPEAL from a judgment of the circuit court for Dane
county: S. D. HASTINGS, Judge. *Affirmed.*

For the appellant there was a brief by *William G. Wheeler*
and *Ralph W. Jackman,* and oral argument by *Mr. Jackman.*
They cited, besides other cases, *Bolin v. C., St. P., M. & O.
R. Co.* 108 Wis. 333, 84 N. W. 446; *Winkler v. Fisher,* 95
Wis. 355, 70 N. W. 477; *Boyce v. Wilbur L. Co.* 119 Wis.
642, 97 N. W. 563; *Nagle v. Hake,* 123 Wis. 256, 101 N. W.
409; *Rylander v. Laursen,* 124 Wis. 2, 102 N. W. 341.

For the respondent there was a brief by *Aylward, Davies,*

*Olbrich & Hill,* and oral argument by *M. B. Olbrich.* They cited *Schultz v. La Crosse City R. Co.* 133 Wis. 420, 113 N. W. 658, and other cases.

Timlin, J. In this case the defendant appeals from a judgment for $1,600 and costs rendered upon a special verdict finding that defendant's baggageman caused the injury by pushing the plaintiff from a baggage car while the train was moving; that the baggageman was guilty of reckless or wanton conduct in so doing, and that the act was within the scope of his employment. It appeared without dispute that the plaintiff was injured while attempting to "steal a ride" on the front platform of defendant's baggage car.

It is claimed that there is no evidence to support the finding that the baggageman was within the scope of his employment in ejecting the plaintiff from the baggage car. No written rule or by-law of the corporation is produced relating expressly to trespassers on defendant's cars. Written rules are in evidence to the effect that baggagemen will be held responsible for any damage to, loss, or miscarriage of baggage resulting from carelessness. That they must remain in the baggage car while on duty unless otherwise instructed by the conductor, and not leave the car at the end of their run until all baggage is delivered to the station agent or station baggageman. Baggage-car doors must be securely locked at all times, and no person except those in the performance of duty may enter the baggage car. Another rule relates exclusively to disorderly passengers, and still another to the ejectment of passengers. This last contains the following:

"In all cases, on the refusal of any passenger to produce a proper ticket or pass, or to pay the fare, the conductor shall cause the train to be brought to a full stop at a regular open station, require such person to leave the train, and, on refusal, shall remove him or her therefrom. . . . A sufficient

Daley v. Chicago & N. W. R. Co. 145 Wis. 249.

force must be brought into requisition to overcome resistance, and to place the person on the ground without inflicting injury, the law being that conductors may command employees or any of the passengers to assist in such removal."

Authority to eject a passenger who refuses to produce a proper ticket or pass or pay the fare would certainly include authority to eject a trespasser who made like refusal. One who attempts to ride without ticket, pass, or payment would ordinarily be a trespasser. The plaintiff, as an expert having a long and varied experience in stealing rides, was permitted to testify to the custom and practice of baggagemen when they find a trespasser on the front end of the baggage car. It is not necessary to pass upon the correctness of this ruling because the defendant does not desire a new trial of the case. We shall eliminate this item of evidence in our investigation. One McCoy, who had been in the employment of the defendant as locomotive fireman up to 1895, testified that it was the practice and custom in the operation of that road for baggagemen to put tramps off the platform of the baggage car. Hyland, an expressman who worked on the same road up to about ten years before the trial, gave like evidence; and on the part of the defendant, Cannon, the conductor of the train in question, testified that it was not the practice or custom of baggagemen to eject trespassers from the baggage car; and Whitney, another conductor, and other employees of the defendant testified that it was not the custom for baggagemen on the Northwestern road to eject a trespasser found on the head end of the baggage car, but the baggageman notifies the conductor by word or signal. The trespasser is invited into the baggage car by the baggageman and sent back to the smoker and reported to the conductor.

The question is not free from difficulty and was ably presented. The verdict must be supported if at all under the following precedents:

In *Bergman v. Hendrickson,* 106 Wis. 434, 82 N. W. 304,

a servant was employed as bartender and engaged in such duties. An intoxicated person entered, made two or three purchases of liquor, and refused to pay. The barkeeper assaulted and injured him and he brought an action for damages against the employer. It was ruled that if this assault was committed with the purpose and in the line of enforcing payment for this liquor the employer would be liable.

"It was his [the employee's] method of performing the duty delegated to him, and, although the method may not have been either expressly authorized or even contemplated,—nay, although it may have been expressly prohibited,—yet the master is liable for the damages caused thereby, provided he has intrusted to the servant the duty he was attempting to perform."

In that case authority to collect for drinks sold to guests or customers was a permissible inference by the jury from the fact that the employee was charged with the duty of making sales and in charge of the saloon.

In *Johnston v. C., St. P., M. & O. R. Co.* 130 Wis. 492, 110 N. W. 424, a servant employed as night watchman was charged with the duty to prevent property from being stolen and see that cars were not damaged. A general agent of the corporation defendant instructed this night watchman to investigate and report concerning the throwing of sticks by boys at the passenger coaches of the railway company. In carrying out these orders the night watchman assaulted and imprisoned the plaintiff with a view of endeavoring to ascertain who committed the offense. The court said:

"It is contended that authority to investigate does not imply authority to do unlawful acts in the execution of such duty, and that when Gallagher unlawfully assaulted and imprisoned the plaintiff he was not within the scope of his duty. But, since he had authority to investigate and was thus engaged, his acts, though unlawful, were binding upon his master. A master is liable for the tortious act of the servant

done in the scope of his employment, though the master did not sanction it, or even though he forbade it."

In *Wilson v. Noonan,* 27 Wis. 598, it was held that the employer was responsible for libel by an agent where the latter was employed to translate written productions from one language to another and publish the same as translated, although the translation was incorrect and the particular libelous words in the foreign language were unauthorized by the master.

In *Schultz v. La Crosse City R. Co.* 133 Wis. 420, 113 N. W. 658, the employer was held liable for an assault and battery by its servant upon evidence from which the jury was authorized to infer that the servant was in charge of a car belonging to the master and that the assault was for the purpose of protecting the master's property from trespass. Here the jury was permitted to infer that one in charge of a vehicle is or may be authorized to exclude from such vehicle trespassers or intruders, and the inference of fact is in accord with common sense and the experience of mankind. It would be most strange and unusual if one were to send his servant to the station with a carriage or automobile, or to the gravel pit for a load of gravel, and yet the servant have from his charge of the vehicle no authority to eject intruders who might insist upon climbing on the vehicle and riding free.

In *Evans v. Davidson,* 53 Md. 245, a farm hand was employed to do general farm work. While engaged in cultivating corn a cow broke into the cornfield from an adjoining farm. Without any direction to that effect the farm hand undertook to drive out the cow, and in so doing struck her with a stone and killed her in the field. It was held to be a question of fact for the jury whether the act of driving out the cow was within the scope of the servant's employment under such circumstances. It was considered that if the servant be acting at the time in the course of his master's

service and for his master's benefit within the scope of his employment, then his act, though wrongful or negligent, should be treated as the act of the master although there was no express command.    The court said:

"What is embraced, as commonly understood, in general farm work? In the very nature of the employment there must be some implied authority and duties belonging to it; and this as well for the protection of the master as third parties.    If, for instance, a servant thus employed should see a gate open or a panel of fence down, through which a herd might or would likely enter and destroy his master's grain, we suppose all would say, that it would be the positive duty of the servant to close the gate or put up the fence, to prevent the destruction of the grain; and if he should pass by and wilfully neglect such duty, it would constitute cause and a sufficient justification for the discharge of the servant.    If that be so, how much more imperative the duty, where, as in this case, in the absence of the master, the servant being in the field at work, and seeing a herd of cattle break into the field, and in the act of destroying corn, to drive out the cattle and thus to save the corn from destruction?"

From the foregoing precedents it is easy to derive a rule that, where one is in charge of his master's vehicle with the right to use it for certain purposes, the jury may infer that it is within the scope of his employment to expel intruders or trespassers who attempt to use the vehicle for other, unlawful, or unauthorized purposes.    But where there are several servants the master may select which of these he will put in charge or upon which of these servants he will confer the authority to protect the property against trespassers.    This will rebut such authority on the part of other servants if nothing else appear.    This appears to have been done in the instant case, but still leaving with the baggageman a duty relating to trespassers who attempt to steal a ride on the baggage car.    This duty did not include the ejection of the trespasser, but it did call on the baggageman, when he observed the act of trespass, to give information to the con-

ductor and thus call into action the forces provided by the master for the humane and careful ejection of the trespasser, as in case of the passenger without a ticket or pass who refused to pay fare. By the written rule the baggageman had the further duty to aid the conductor in ejecting a trespasser when called upon by the former. In the instant case, instead of discharging this duty in the manner prescribed, the baggageman undertook in his master's interest to discharge it by the short cut of himself expelling the trespasser without calling the conductor or waiting for his orders. Had the baggageman not used excessive force his act would have been legal. But from these regulations of his employment the jury might infer that his act, while outside the express authority conferred upon him, was yet within the scope of his employment. They might say of the baggageman as was said by Justice DODGE in *Bergman v. Hendrickson,* 106 Wis. 434, 82 N. W. 304: "It was his method of performing the duty delegated to him."

Having observed the trespasser he should have called the conductor and left the latter to deal with him, except that if required by the conductor he must assist in expulsion. He did not call the conductor nor wait for his orders, but undertook to expel the trespasser without this detail of procedure, and in so doing, as found by the jury, used excessive and unnecessary violence. There was therefore evidence to support the verdict.

Subordinate questions are also presented by the appeal, but we have not considered it necessary to discuss them at length.

*By the Court.*—Judgment of the circuit court affirmed.