## C., N. O. & T. P. Ry. Co. v Brandenburg.

(Decided March 16, 1911.)

### Appeal from Scott Circuit Court.

1. Railroads—Injury to Passenger—Action for Damages—Evidence Admissible.—One suing for damages for injuries by being thrown from or falling from a railroad train should have been permitted to describe the nature and extent of his injuries, the length of time he was prevented from laboring, with items of expense for medicine or medical treatment, nursing, etc., but should not be permitted to state in gross the sum which he estimated he had been damaged by reason of his injury, as this was a matter addressed to the sound discretion of the jury.

2. Ejection of Passenger—Subsequent Climbing on Rear Platform—Rights Acquired Thereby.—Where one was ejected from a railroad train he was no longer a passenger, and when he climbed upon the steps of the rear platform and concealed himself under the drop cover, his relation to the company was not that of a passenger, but a trespasser, and the company then owed him no duty except to protect him from injury after his presence was discovered.

BRADLEY & BRADLEY and JOHN GALVIN for appellant.

FORD & FORD, J. MORGAN CHINN and J. K. ROBERTS for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

Alleging that he was carelessly, negligently and wrongfully ejected or thrown from one of appellant's trains, while running at a high rate of speed, by the conductor or other employe in charge, appellee sued to recover damages for injuries sustained by reason of said wrongful or negligent act. The company denied liability and pleaded that, at the time the accident happened, appellee was a trespasser upon said train, and jumped or fell from the train of his own accord and without fault on the part of any of the employes of said company.

A trial before a jury resulted in a verdict in favor of appellee for $500.00. The company appeals. The grounds relied upon for a reversal are, that the court misinstructed the jury, that the verdict is not supported by the evidence, and that certain incompetent evidence was permitted, over the objection of appellant, to go to the jury.

The incompetent evidence complained of is, that the plaintiff was permitted to testify that he thought he was

injured or damaged to the extent of $3,000. He should have been permitted to describe the nature and extent of his injury, together with the length of time he was prevented, because thereof, from following his usual vocation, or from laboring, together with such items of expense as he was put to for medicine, medical treatment, nursing, etc.; but should not have been permitted to state in gross the sum which he estimated he had been damaged by reason of his injury. This was a matter addressed to the sound discretion of the jury under the facts, and should have been left to them. In Muldraugh's Hill, etc., Turnpike Co. v. Maupin, 79 Ky., 101, a somewhat similar question was before the court, and in passing on the testimony of a physician as to what he regarded as proper compensation for the injury, this court held such testimony to be incompetent. In addition to being permitted to state that he was damaged to the extent of $3,000 by reason of the injury, the witness was further permitted to state, over the objection of the defendant, that he "would not have had it happen for anything." This evidence was incompetent, but we would not disturb the verdict and finding of the jury because of this fact alone, as it is apparent it was not prejudicial.

It is next insisted that the verdict is flagrantly against the evidence. The facts, as fully developed, are that appellee, who lived in Lee county, Kentucky, had gone to Columbus, Ohio, to enlist in the army. For some reason he did not enlist, but at once returned to Cincinnati, reaching there after five o'clock, and took the sixten train, on the Queen & Crescent Railroad, intending to go to Lexington. He claims that he purchased a ticket to Lexington; that he boarded a train, took a seat, and that sometime after the train left Cincinnati he went to the end of the car for the purpose of getting a drink of water; that, when passing the conductor, he was stopped by him and asked for his ticket; that he gave his ticket, calling for passage to Lexington, Kentucky, to the conductor, and passed on and took a seat; that later the conductor came to him and demanded his ticket, and he at that time insisted that he had already given up his ticket. This the conductor denied, telling him that he had only given him a ticket good to Williamstown, Kentucky; that he would have to pay cash beyond that point or be put off; that he then gave the conductor forty cents, which entitled him to passage to Corinth; that at Corinth

he was requested to leave the coach, and finally was required to leave the coach at Sadieville. This he did, and, in leaving the train he was subjected to no indignities or harsh treatment on the part of the conductor or any other employe of the company. As the train started out from Sadieville, appellee passed back to the rear car and climbed up on the steps. The rear platform of this car was provided with a drop cover to the steps. This cover was down, and appellee concealed himself on the steps thereunder, and thus rode for some time. The brakeman having seen someone pass toward the rear of the train just before it left Sadieville, went back to discover if he had climbed upon the rear coach. Not finding him on the rear platform, he raised the cover to the steps, and there discovered appellee in a squatting position. According to his testimony he told appellee to come up into the car, and started to take hold of him to help him up, and did catch hold of him, when appellee told him to let him go, and appellee either jumped or fell from the car. Appellee insists that the brakeman told him to come up into the car, and, as soon as he raised up, shoved or pushed him from the step. It is conceded that, at this time, the train was running at from thirty to thirty-five miles an hour. Seated in this rear coach right next to the rear platform, and looking out, were A. H. Baker, general manager of the road, and D. M. Case, superintendent of signals for the road. Mr. Baker testified that when the brakeman spoke to appellee there was nothing in his manner or in the tone of his voice that would indicate an intention or desire on his part to injure or mistreat appellee. On the contrary, it was an invitation to him to come from a place of danger to one of safety. That the brakeman did not push, or shove, or throw appellee from the step. Mr. Baker is corroborated throughout his testimony by Mr. Case, and both corroborate the brakeman. The weight of the evidence is against the contention of appellee that he was thrown or shoved from the step.

At the time this accident happened the train was between stations. The conductor was notified, and at the next station he telegraphed back to have the section foreman hunt up appellee, and to have the fast freight following notified that he had fallen from the train, so that those in charge might be on the lookout his presence on or about the track. Appellee went to the home of one Mr. Rogers, near there; his injuries were

given such attention as Mr. Rogers and his wife were able to give, and the next day he was taken in charge by the railroad people, sent to Lexington, his wounds dressed, and he was then forwarded to Beattyville on the road to his home in Lee county.

While an issue is made in the pleadings on the question as to whether or not appellee had purchased a ticket from Cincinnati to Lexington, this was but an incident to the presentation of the real cause of action, the charge that appellee was wrongfully, willfully and negligently thrown from the train while in motion, thereby causing his injury. He sustained no injury by being put off the train at the time when the conductor required him to leave it. The only damage which he sustained by reason of that act, if wrongful, was the expense to which he would have been put to go from that point on to Lexington, his destination, and any loss he suffered by reason of the delay occasioned in reaching Lexington. The cause of action for which he seeks a recovery is separate, distinct, and wholly disconnected with his being required by the conductor to leave the train. The evidence fails to show that, in requiring him to leave the train, the conductor was rude, rough or insulting in his manner, or that the conduct of the conductor at the time he was ejected from the train was such as to give appellee any just cause of complaint, save for the items of expense or cost of being transported from the point at which he was ejected to Lexington, together with a reasonable compensation for any loss sustained by reason of his delay in reaching that point. After he was ejected from the train he was no longer a passenger; and when he climbed upon the step of the rear platform and concealed himself under the drop cover, his relation to the company was not that of a passenger, but a trespasser, and the company owed him no duty except the duty to protect him from injury after his presence there was discovered.

The instructions should have directed the jury's attention to the single issue, Was plaintiff pushed or shoved from the train by the brakeman? This phase of the case was correctly given in instruction No. 1. The measure of damages as defined in instruction No. 2 was proper; and instruction No. 4 correctly defines gross negligence. Instruction No. 3 was based upon the idea that, at the time plaintiff received his injuries, he was in fact a passenger. This was error, and upon another trial, in-

struction No. 3 will be omitted, as will also instructions Nos. 5 and 6. Since instruction No. 3 is not to be given, the reference to it in instruction No. 1 should be omitted. The instructions asked for by defendant were properly refused.

For the reasons indicated the judgment is reversed and the cause remanded for another trial and further proceedings consistent herewith.