Argued March 29, re-argued January 8, affirmed January 15, 1929.

## HARRY C. NEWKIRK *v.* OREGON–WASHING-TON RAILROAD & NAVIGATION CO.

(273 Pac. 707.)

For appellant there was a brief over the names of *Mr. Arthur C. Spencer, Mr. A. A. Murphy,* and *Mr. Roy F. Shields,* with an oral argument by *Mr. Shields.*

For respondent there was a brief over the names of *Messrs. Lord & Moulton,* with an oral argument by *Mr. Arthur I. Moulton.*

COSHOW, C. J.—2. We must accept the jury's verdict as to the facts. The evidence was very contradictory. Defendant testified that he was brutally and without warning assaulted by being struck on the side of the head with a lantern, or some other object which rendered him at least partially unconscious, and then partially shoved and partially kicked from the train or thrown therefrom. The conductor on the train and his three brakemen, the engineer and fireman, all testified in direct contradiction to the testimony of plaintiff and his traveling companion, Mr. Stotlar. If we were sitting as a trier of facts, we would probably reach a different conclusion from the jury's verdict, but we are not permitted to weigh the evidence nor to pass upon the credibility of the witnesses.

Defendant insists, however, that there is no evidence that a brakeman was authorized to eject tres-

passers from a moving train. We can safely concede that no such authority is claimed to be vested in a brakeman. Defendant in stating the legal proposition in that language does not correctly represent the position taken by plaintiff. We might safely say that we think no railroad company through its employees or officers would authorize any person to hurl a trespasser ·from a moving train. The real controversy centers around whether or not a brakeman by virtue of his employment is authorized to eject in a proper manner a trespasser from a freight train. If a brakeman is so authorized the question is then narrowed down to whether or not a brakeman who exceeds that authority and rashly ejects a trespasser from á moving train thereby renders a railroad company liable for the consequences.

The authorities are in conflict. Defendant relies on the following authorities, most of which seem to squarely hold to the principle that a railroad brakeman on a freight train is not impliedly authorized by virtue of his employment to eject a trespasser from a moving or standing freight train: 20 Am. & Eng. Ency. of Law (2 ed.), 172, 173; 2 Woods' Railway Law, 1202, 1203; 6 Thompson's Commentaries on the Law of Negligence, p. 667, § 7718; *Farber* v. *Missouri Pac. Ry. Co.*, 116 Mo. 81 (22 S. W. 631, 20 L. R. A. 350); *International & G. N. R. Co.* v. *Anderson*, 82 Tex. 516 (17 S. W. 1039–1041, 27 Am. St. Rep. 902); *Harrington* v. *Boston & M. R. R.*, 213 Mass. 338 (100 N. E. 606, Ann. Cas. 1914A, 597, 45 L. R. A. (N. S.) 813); *Lake Shore & M. S. Ry. Co.* v. *Peterson*, 144 Ind. 214 (42 N. E. 480, 482, 43 N. E. 1); *Corcoran* v. *Concord & M. R. Co.* (C. C. A.), 56 Fed. 1014; *Bess* v. *Chesapeake & O. Ry. Co.*, 35 W. Va. 492 (14 S. E. 234, 29 Am. St. ·Rep. 820);

*Marion* v. *Chicago, R. I. & P. R. Co.,* 59 Iowa, 428 (13 N. W. 415, 416); *Randall* v. *Chicago & G. T. Ry. Co.,* 113 Mich. 115 (71 N. W. 450, 38 L. R. A. 666); *Chicago & W. I. R. R. Co.* v. *Ketchem,* 99 Ill. App. 660, 663, 664.

The following are cases where a brakeman or other trainman threw stones or coal at the trespasser in order to drive him off the train: *Patenaude* v. *Boston & M. R. R.,* 77 N. H. 74 (87 Atl. 249, 250); *Chesapeake & O. R. Co.* v. *Anderson,* 93 Va. 650 (25 S. E. 947, 949, col. 2); *Georgia Railroad & Banking Co.* v. *Wood et al.,* 94 Ga. 124 (21 S. E. 288, 47 Am. St. Rep. 146); *Whistler* v. *Cowan et al.,* 26 Ohio C. C., 511. Most of these cases would be more impressive as authorities if it were not for the manner in which they put the proposition. It seems to the writer that in every instance, with possibly one or two exceptions, the statement is made that a brakeman has not implied authority to drive a trespasser from a moving train by viciously assaulting him in some way. This is not the problem presented. The problem is: has a brakeman implied authority by reason of his employment to eject trespassers from a freight train? If he has, and in the course of his employment the trespasser is ejected, the railroad company is liable if the ejection is committed in an improper or vicious manner to the injury of a trespasser. The authorities relied upon by plaintiff seem to the writer to more logically state their reasons for the conclusion they reach. It cannot be denied that a freight train is primarily in charge of a conductor. It is equally true that the brakemen are his assistants. Most of the authorities cited by defendant either assume or decide that a conductor in charge of a freight train has authority to eject trespassers. Some authorities

go so far as to say that it is his duty to eject trespassers at a proper time and in a proper way. That the conductor may call upon the brakemen to assist him in the performance of that duty seems not to be disputed. But it is insisted on the part of defendant that in order to make the railroad company liable for a brakeman's act the brakeman must be specially ordered to eject the particular trespasser at the time, or must have specific general orders to that effect. We do not believe that to be correct. It seems to us just as reasonable to require the brakeman to get specific orders for any other of his duties as to exact particular instructions for the protection of his train against the invasion of trespassers.

The conductor in the instant case testified:

"Q. It is the practice of brakemen on trains to look after persons who are trespassers and see they don't trespass on the train? A. No, not compulsory."

We take it from that answer that while that is one of the duties of a brakeman the company does not arbitrarily exact the strict performance of that duty. It is strenuously argued by defendant that it would cost much more to see that every trespasser is put off the train than it would to carry them. But even so we think that some discretion is left to the conductor and brakeman. The presence of trespassers, especially such vicious trespassers as the learned counsel for defendant have described in their brief, might do a great deal of harm not only to the railroad company's property but the property of its patrons entrusted to the railroad company for transportation. There must be some power lodged somewhere along the train for the lawful protection of the

property committed to the railroad company for transportation. The conductor further testified:

"Q. You don't expel persons from the train? A. No, sir; I might tell them to get off the train while the train is stopped, but I would not walk over a train to put trespassers off, because that is not our business.

"Q. It isn't your business? A. No."

3, 4. The authorities seem to be practically unanimous in holding that the person in charge of the train has authority to eject trespassers therefrom. The question presented here then narrows itself down simply to the extent or limit of the authority of brakemen on freight trains. We believe it to be a part of the duty of brakemen on freight trains to assist the conductor in preventing trespassers from entering on or riding in the trains under their control and to protect the property of the railroad company as well as the property entrusted to it for transportation from depredation of trespassers. Since it is a part of the duty of brakemen to assist in that work, their company is liable if that duty is negligently performed to a trespasser's injury. We think the following authorities state the better rule of law in that respect: 2 White on Personal Injuries on Railroads, p. 1622, § 1088; Patterson's Railway Accident Law, 109; 39 C. J. 1292, § 1487; 18 R. C. L. 775, 789, 792, §§ 236, 248, 252; *Johnson* v. *C., St. P., M. & O. Ry. Co.*, 116 Iowa, 639, 642 (88 N. W. 811). On page 642 of the official report is this language:

"Furthermore even if the act, was, in a just sense, wilful, it may also be properly charged as negligent. The brakeman, in the line of his duty, could lawfully expel the plaintiff as a trespasser upon the train; but if he discharged that duty with excessive force

or violence, or at such time or in such manner as to unreasonably imperil the life and limb of the trespasser, then he was negligent as charged, and his employer is liable.''

*Kansas City, Ft. S. & G. R. Co.* v. *Kelly,* 36 Kan. 655 (14 Pac. 172, 59 Am. Rep. 596); *Smith* v. *Louisville & N. R. Co.,* 95 Ky. 11 (23 S. W. 652, 22 L. R. A. 72); *Cincinnati, N. O. & T. P. R. Co.* v. *Brandenburg,* 142 Ky. 814 (135 S. W. 296); *Stottard* v. *Chicago, R. I. & Pac. R. R.,* 124 Kan. 259 (259 Pac. 683); *Daley* v. *Chicago & N. W. R. Co.,* 145 Wis. 249 (129 N. W. 1062, 32 L. R. A. (N. S.) 1164); *Dorsey* v. *Kansas City, P. & G. R. Co.,* 104 La. 478 (29 South. 177, 52 L. R. A. 92); *Brevig* v. *Chicago, St. P., M & G. Co.,* 64 Minn. 168 (66 N. W. 401); *Barrett* v. *Minneapolis, St. P. & S. St. M. R. Co.,* 106 Minn. 51 (117 N. W. 1047, 130 Am. St. Rep. 585, 18 L. R. A. (N. S.) 415); *Penas* v. *Chicago, M. & St. P. R. Co.,* 112 Minn. 203 (127 N. W. 926, 140 Am. St. Rep. 470, 30 L. R. A. (N. S.) 627); *Golden* v. *Northern P. R. Co.,* 39 Mont. 435, 436 (104 Pac. 549, 18 Ann. Cas. 886, 34 L. R. A. (N. S.) 1154); *W. J. & S. R. Co.* v. *Welsh,* 62 N. J. Law, 655 (42 Atl. 736, 72 Am. St. Rep. 659); *Cook* v. *Southern R. Co.,* 128 N. C. 333 (38 S. E. 925); *Hayes* v. *Southern R. Co.,* 141 N. C. 195 (53 S. E. 847); *Moore* v. *Atchison, T. & S. F. R. Co.,* 26 Okl. 682 (110 Pac. 1059); *Dixon* v. *Northern P. R. Co.,* 37 Wash. 310 (79 Pac. 943, 107 Am. St. Rep. 810, 2 Ann. Cas. 620, 68 L. R. A. 895.)

We are not impressed with defendant's earnest argument to the effect that there is a wide distinction between freight and passenger trains in so far as the duty of brakemen is concerned. In both trains we think brakemen are under the command of the conductor, are required to assist him wherever he

might need them and that one of the principal duties of the brakemen on either kind of train is to protect the property of the company as well as other property committed to its care. We believe that requires the courts to imply from the very nature of brakemen's employment the authority to eject trespassers at proper places and times. It naturally follows therefrom that the railroad company is liable for damages resulting from an abuse or improper discharge of said duties to the injury of a trespasser. We believe that a brakeman would be justified legally in defending his employer's property from damage and might repel an attack from a trespasser to the same extent as though the attack was being made upon the brakeman's individual property. This we think would not be so if it was not within the scope of the brakeman's authority or his duty to eject trespassers. Indeed, it would seem of more practical importance for the brakemen to exercise such authority without immediate and specific directions from the conductor of a freight train than of a passenger train because of the length of freight trains, the difficulty of traversing them, as well as the manifold duties of the conductor, who cannot always be in the immediate presence of the brakemen or within a few cars thereof. We also believe that the trend of modern authorities is toward holding a railroad company more strictly to account for the conduct of its employees. The authorities heretofore cited support this conclusion.

We are persuaded that there is direct testimony that the party who assaulted plaintiff was a brakeman. This testimony might be weakened slightly by an admission from the plaintiff that the assaulter might have been the conductor. He testified, how-

ever, what the assaulter did and that he was a brakeman. We do not think the conclusion that the party who assaulted plaintiff was a brakeman is altogether an inference. We do not think either that the assumption that the brakeman had authority to eject a trespasser is an inference. That is a presumption implied by law. That presumption attaches to the brakeman's general duties as a matter of law. It seems to us necessary that such authority be attached to a brakeman's duty in order to afford protection alike to the property of the company and the property entrusted to it for transportation.

The later authorities state the rule thus:

"The rule laid down by earlier decisions both in England and in many of the United States is that the master is not liable for damages resulting from the wilful, wanton, or malicious acts of his servant unless done by his express direction or with his assent, although the act was committed within the line of the servant's duties. But now in almost all jurisdictions it is well settled that the master is liable for the wilful or malicious acts of the servant done in the course of his employment and within its scope, although the acts were not expressly ratified by the master or authorized by him. Such acts are imputable to the master under the doctrine of *respondeat superior,* and in accordance with general principles heretofore discussed the master will be liable, although the acts were in disobedience of express orders or instructions given by him, or although the particular act complained of may have been in excess of the servant's authority, and regardless of the motive or intention of the servant. It has been held, however, that, if the nature of the act is such as to render it doubtful if the act comes within the scope of the servant's employment, the intention with which the act is done may be con-

sidered in determining its character." 39 C. J. 1292, § 1487.

"It is not the test of the employer's liability for the wrongful act of the employee, from which injury to a third person has resulted, that he expressly authorized the particular act and conduct which occasioned it. In most cases where the employer has been held liable for the negligent or tortious act of the employee, the employee acted not only without express authority to do the wrong, but in violation of his duty to the employer." 18 R. C. L. 793, § 252.

5. We conclude that defendant seeks release from liability because it never authorized any of its trainmen to eject a trespasser from a train while in motion. But when an employee does in the course of his employment a duty in an improper manner his employer is liable for any consequent injury, even though the employee disobeyed his orders.

"A master is liable for the acts of his servant done within the scope of his authority, although the servant disobeyed instructions." *French* v. *Cresswell,* 13 Or. 418 (11 Pac. 62).

6. The absence of direct evidence that a brakeman was ordered to eject plaintiff from the train in the manner and time the jury found was done in the instant case is no bar to plaintiff's recovery. No error appears in the record. Judgment is affirmed.

AFFIRMED.

BROWN, J., concurs in the result.

RAND and ROSSMAN, JJ., dissent.