Argued and submitted December 2, 2003, reversed and remanded
September 15, 2004

Robert G. CONEY,
*Appellant,*

*v.*

Cynthia FAGAN
and Landa S Inc.,
*Defendants,*
*and*

FIRCO HEALTHCARE, INC.,
an Oregon corporation,
dba Firwood Gardens Retirement Home,
*Respondent.*

0010-10497; A116943

97 P3d 1252

Donald B. Potter argued the cause and filed the briefs for appellant.

Jeffrey Spere argued the cause for respondent. With him on the brief were Frances Baker and Sussman Shank LLP.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Plaintiff brought claims for defamation and intentional interference with economic relations against Firco Healthcare, Inc. (Firco), and its employee Fagan. Firco moved for summary judgment on plaintiff's claims, which the trial court granted. Plaintiff appeals from an ensuing judgment that dismissed his claims against Firco. He argues that the record shows that there are genuine issues of material fact about whether Fagan made a defamatory statement, whether Firco is vicariously liable for that statement, and whether the statement caused his employer, Landa S, Inc. (Landa), to terminate his employment. We reverse and remand.

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. On review of the grant of summary judgment, we state the facts and all reasonable inferences that may be drawn from them in favor of the non-moving party—in this case, plaintiff. ORCP 47 C; *Robinson v. Lamb's Wilsonville Thriftway*, 332 Or 453, 455, 31 P3d 421 (2001).

Firco owns Firwood Garden Retirement Home (Firwood), which is located in Portland. Landa is located in Camas, Washington. Landa rents, manufactures, and sells pressure-washing machines. The corporations are linked by a child's death. Farias, a Firwood employee, had a two-and-a-half-year-old child who died from injuries that he suffered after he ran in front of a moving vehicle. Patterson, an employee at Firwood, started a collection from Firwood employees and residents to help Farias pay associated medical bills.

Patterson also contacted her friend, plaintiff, and asked if he would start a similar collection at Landa. Plaintiff did so, and Landa agreed to match the contributions made by Landa employees. Sometime after the collection of funds began at both Firwood and Landa, Patterson approached defendant Fagan and asked her to open a bank account for Farias and to deposit funds into the account as they were

received. At the time, Fagan was the administrator of Firwood. Fagan agreed to open the account and did so.

After Fagan established the account, Farias attempted to withdraw funds from it. Because Fagan had not given Farias signature authority on the account, the bank did not allow Farias to make withdrawals. Patterson learned of Farias's unsuccessful attempt and subsequently accused Fagan of mismanaging the account. Patterson repeatedly called Fagan to discuss the account. After several conversations, Patterson told Fagan that, unless she turned over the records of the account to Landa, Landa would pursue legal action against Fagan. The bank also called Fagan and told her that someone had called the bank to complain that Fagan was stealing money from the account.

Fagan drove to Landa to discuss Patterson's allegations with Landa management. When she arrived, she identified herself as Firwood's administrator. Fagan spoke with Sanford, a member of Landa's management. Sanford told Fagan that Landa had never considered taking legal action against Fagan. Sanford also told Fagan that a Landa employee, Calhoun, had complained about Fagan's handling of the account and that Sanford had told Calhoun that he should call the bank if he was concerned about how Fagan was handling the fund. Calhoun was plaintiff's supervisor at Landa. Plaintiff alleges that, during Fagan's conversation with Landa management, Fagan said that she had seen Patterson, Calhoun, and plaintiff ingesting cocaine at Firwood. At the time of the alleged statement, Fagan knew that plaintiff worked at Landa and that plaintiff was Patterson's best friend.

After Fagan's conversation with Sanford, Landa terminated plaintiff's employment. Plaintiff alleges that he was terminated because of the statement that Fagan made to Sanford about plaintiff's use of cocaine. Fagan and Sanford denied that Fagan made the statement. However, Fagan's sister, Baker, said that Fagan told her that she had made such a statement to Sanford.

After he was terminated, plaintiff brought this action against Fagan and Firco, alleging claims of defamation *per se* and intentional interference with economic relations. Firco moved for summary judgment on plaintiff's

claims. Firco's motion was based on two arguments: first, that there was no issue of material fact about whether a defamatory statement was made; and, second, that even if Fagan made a defamatory statement, there was no issue of material fact about whether Firco could be vicariously liable to plaintiff for the statement. The trial court granted Firco's motion. Plaintiff appeals the judgment dismissing his claims against Firco.

■ Plaintiff first argues that Baker's affidavit creates an issue of fact about whether Fagan made a defamatory statement to Sanford about plaintiff's alleged use of cocaine. Baker testified:

> "Fagan told me that she had caught Dora Patterson, [plaintiff] and Cal Calhoun doing cocaine in the maintenance room at Firwood Gardens and that she had to fire Dora from Firwood because of it.

> "[Fagan] also told me at that time that she had to go over to Landa, where [plaintiff] and Cal Calhoun worked, and tell Gary Sanford of Landa that she had caught [plaintiff] and Calhoun doing cocaine in the maintenance room at Firwood."

We agree that Baker's testimony creates a factual issue about whether Fagan made the allegedly defamatory statement because Baker's testimony would allow a reasonable jury to find that Fagan had made the disputed statement. The trial court therefore erred in concluding that there was no factual issue about whether the allegedly defamatory statement was made.

■ We turn to plaintiff's argument that there were factual issues about whether Firco was vicariously liable for the allegedly defamatory statement. "Under the doctrine of *respondeat superior*, an employer is liable for an employee's torts when the employee acts within the scope of employment." *Chesterman v. Barmon*, 305 Or 439, 442, 753 P2d 404 (1988) (citation omitted). To establish that an employee's act was within the employee's scope of employment, a party must satisfy three requirements:

> "(1) the conduct must have occurred substantially within the time and space limits authorized by the employment;

(2) the employee must have been motivated, at least partially, by a purpose to serve the employer; and (3) the act must have been of a kind that the employee was hired to perform."

*Lourim v. Swenson*, 328 Or 380, 385, 977 P2d 1157 (1999).

If we determine that there is a factual issue about whether an employee was acting within the time and space limits authorized by the employment, we then consider the second and third elements to determine whether there is an issue about whether the allegedly tortious conduct by the employee "was sufficiently connected to the employer's purpose to support the employer's vicarious liability." *Minnis v. Oregon Mutual Ins. Co.*, 334 Or 191, 206, 48 P3d 137 (2002).

■ Plaintiff argues that Fagan was acting within the time and space limits authorized by her employment when she made the allegedly defamatory statement. The parties agree that Fagan's general work hours were from 8:30 a.m. to 5:00 p.m., five days per week and that, unless she was on vacation, Fagan was on call when she was not working. The record also shows that Firwood had a written job description for Fagan's position of administrator. The job description states that the administrator has "full responsibility for [the] overall management and control of the facility and residents." The description also makes the administrator responsible for "[p]romot[ing] and maintain[ing] good personal relations[hips] with residents, families, community and employees." The description also requires the administrator to "[p]resent a positive and professional image to staff, residents, families and community through appropriate actions and dress."

In light of those provisions, a reasonable jury could find that, as the administrator of Firwood, Fagan had the authority to leave Firwood and speak with other people in order to maintain her personal relationships with, or to ensure that she was viewed in a positive light by, Firwood residents, families, staff, and community members. A reasonable jury could also find that Fagan went to Landa for those reasons and that her conduct therefore fell within the time and space limits authorized by her employment. Thus, evidence in the record creates a factual issue about whether

Fagan's conversation with Sanford was within the time and space limits authorized by her employment.

We next consider whether plaintiff has created a factual issue on the second and third requirements of the *Chesterman* test for vicarious liability. Plaintiff argues that he has "presented more than ample evidence from which a jury could find that Fagan's communication with Landa, during which she defamed plaintiff, was the kind of act she was hired to perform or that it resulted from, or was an outgrowth of, her duties with Firwood Gardens." Firco responds that "the fact that Fagan's employment may have arguably given her the time and place to speak to [plaintiff's] employers does not mean that her employer was liable for defamatory statements she may have made during that opportunity."

With regard to the second requirement—that Fagan's allegedly tortious act be motivated by a desire to serve Firco—Firco argues that this case is controlled by *Vinsonhaler v. Quantum Residential Corp.*, 189 Or App 1, 73 P3d 930 (2003), and *Miller v. Salem Merchant Patrol, Inc.*, 165 Or App 266, 995 P2d 1206 (2000). Firco is wrong. Those cases are distinguishable because in both cases the plaintiff failed to present any evidence that the employee's act was motivated by a desire to serve the employer.

Here, the evidence shows that Firwood residents and employees, and Landa and its employees, all contributed to the Farias fund. The record also shows that, at various times, Fagan understood that Landa and its employee, Calhoun, were concerned about her management of the fund and that Landa might be considering legal action based on that concern. The record shows that Fagan knew of the friendship between plaintiff and Patterson and that plaintiff was collecting money for the Farias fund at Landa. The jury could infer from the record that Fagan believed that plaintiff, in addition to Calhoun and Patterson, was behind the accusations that Fagan was mismanaging the account and that Fagan made the allegedly defamatory statement in an effort to discredit her accusers.

As noted earlier, Fagan, as administrator of Firwood, was required to maintain her personal relationships with, and ensure that she was viewed in a positive light

by, Firwood residents, families, staff, and community members. A reasonable jury could therefore find that Fagan made the statement in order to do things that she was expected to do as a part of her work as administrator of Firwood: maintain her personal reputation with Firwood residents, families, staff, and community members and also ensure that she and Firco were viewed in a positive light by that group. The regard in which Fagan was held by that group certainly would have been diminished if the people in the group believed that Fagan was stealing from a charitable account established for a Firwood employee. If Fagan successfully discredited her accusers, then she could minimize the damage that the accusations of mismanagement had done to her personal reputation and the way that she was viewed by the relevant group. A reasonable jury could therefore find that Fagan was motivated to make the allegedly defamatory statement at least in part by a desire to serve Firco.

A reasonable jury could also find, based on the record, that plaintiff satisfied the third requirement for establishing Firco's liability—that the act was of the kind that Fagan was hired to perform. Although Fagan was not authorized to make defamatory statements as part of her employment, she was expected to make statements designed to promote her personal relationships with Firco residents, employees, families, and community members and also to ensure that those people regarded her in a positive way. "[W]hen an employee does in the course of his employment a duty in an improper manner, his employer is liable for any consequent injury, even [if] the employee disobeyed [the employer's] orders." *Newkirk v. Oregon-Wash. R.R. & Nav. Co.*, 128 Or 28, 38, 273 P 707 (1929). A jury could find that the allegedly defamatory statement was tied to Fagan's job duties and was an act "of the general kind" that she was expected to perform when she was hired as administrator. The trial court therefore erred in granting summary judgment to Firco on the ground that there was no factual issue about whether Firco could be liable for Fagan's statement.

We turn, finally, to plaintiff's contention that the trial court erred in granting summary judgment to Firco on plaintiff's claim of intentional interference with economic relations because the record establishes a factual issue about

whether Landa fired plaintiff because of Fagan's allegedly defamatory statement about him. Firco argued to the trial court, and reiterates on appeal, that it was entitled to summary judgment on plaintiff's claim of intentional interference with economic relations because plaintiff did not create a factual issue about whether Fagan had made the allegedly defamatory statement. That is one of the arguments that Firco made on the defamation claim, and we have already rejected it. On appeal, Firco argues for the first time that the trial court's decision was proper because, even if the statement was made, there is no factual issue about whether the statement caused Landa to terminate plaintiff's employment. We do not consider Firco's alternative argument because it was not raised in the trial court; if it had been, plaintiff could have developed a different record. *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 660, 20 P3d 180 (2001).

Reversed and remanded.