# Widener v. Alabama Great Southern R. R. Co.

## Ejecting Passenger.

(Decided June 10, 1915. 69 South. 558.)

1. *Appeal and Error; Harmless Error; Pleading.*—Where the amendment added nothing to the legal effect of plaintiff's complaint, and did not increase plaintiff's burden, any error in sustaining demurrer and requiring the amendment was not prejudicial.

2. *Carriers; Passengers; Who Are.*—Where the action was for injury for ejecting an alleged passenger from the waiting room of defendant railroad, a plea setting up that plaintiff went to the depot six hours before the arrival of any train, that such time was not a reasonable time, that defendant owed plaintiff no duty as a passenger during that time, that the rules of the State Railroad Commission merely required the depot to be open one hour before the arrival of the train, and that defendant's agent was not guilty of any wanton or intentional wrong proximately resulting in injury to the plaintiff, states a good defense.

3. *Same.*—One who goes to a railroad station with the bona fide intention of taking the train within a reasonable time before the arrival of the train, becomes entitled to protection as a passenger.

4. *Same; Question of Fact.*—Generally speaking, it is a question for the jury whether or not a person is a passenger, and it is always so when different inferences may be drawn from the evidence.

5. *Same; Evidence.*—Where the action was for injuries for the wrongful ejection of a passenger from a railroad waiting room, an order of the Railroad Commission of the state requiring the stations to be opened one hour before the arrival of trains, was admissible as establishing the reasonableness of the time during which the railroad must keep the station open for the reception of passengers.

6. *Same; Protection.*—If a railroad company opens its station in advance of a reasonable time for the reception of passengers, and permits a prospective passenger to rest therein, such person is entitled to protection only which the law extends to licensees without express invitation.

[Widener v. Alabama Great Southern R. R. Co.]

7. *Same; Ejection.*—Where the passenger went to defendant's wait-ing room six hours before the scheduled arrival of a train he intended to take, and was allowed to stay there for a while, but was subse-quently ordered out by the agent in charge, such person was not entitled to maintain an action against the railroad company for such ejection, there being nothing peculiar in plaintiff's situation so far as concerns defendant's right and duties in the premises.

8. *Same; Revocation of License.*—The fact that a depot agent revoked the right of a licensee to remain in the depot, and addressed him angrily and profanely, constitutes no assault for which he may recover redress in an action counting entirely upon bodily injuries.

9. *Same; Licensee.*—Where a person intending to become a pas-senger while waiting in defendant's station, was ordered out of the station by the agent in charge, and was injured by falling from an unlighted platform, the defendant was not liable, since plaintiff was a licensee and took his permission with its accompanying conditions and perils.

APPEAL from Tuscaloosa County Court.

Heard before Hon. H. B. FOSTER.

Action by A. J. Widener against the Alabama Great Southern Railroad Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Plea 4 is as follows: Plaintiff went to the depot of defendant a long time, to-wit, six hours before the sched-uled arrival of any train of defendant carrying passen-gers, which is not a reasonable time for plaintiff to have gone to said depot before the arrival of said train; and defendant owed plaintiff no duty as a passenger or in-tending passenger at said time, the rules and regulations prescribed by the Railroad Commission of Alabama, applicable to said station of Coaling, only requiring defendant to keep its said depot open for one hour before the scheduled arrival of its passenger train, and until the arrival and departure of said train, and no agent or servant of defendant, acting within the line and scope of his authority as such agent, was guilty of any wanton or intentional wrong proximately resulting in injury to plaintiff.

The counts referred to in the opinion are herewith set out; the amendments made being shown in brackets:

[Widener v. Alabama Great Southern R. R. Co.]

Count 4. Plaintiff further claims of the defendant the sum of $5,000 as damages, for that on or about the 9th day of November, 1912, the defendant was engaged in the business of a common carrier of passengers over its line of railroad operated in and through Tuscaloosa county, Alabama, and along by its station of Coaling in said county; that on or about the said 9th day of November, 1912, while plaintiff was rightfully in said station [where he had gone for the purpose of taking passage as a passenger over dedefendant's road], the defendant's agent in charge of said station, whose name to the plaintiff is unknown, while in the discharge of his duty as the defendant's said station agent, wrongfully insulted, mistreated, cursed, and abused plaintiff, and drove him out into the darkness from said station, thereby causing the plaintiff to fall and strike his head upon the iron rail of defendant's railroad track, and to thereby suffer the infliction of a wound on his head above his eye, by coming in contact with the said iron rail, and thereby cutting the plaintiff's head with a deep gash, and his right knee was also painfully hurt, his neck bruised and injured, and his body otherwise shaken, jarred, and bruised, as a result of all of which plaintiff has suffered intense physical pain and mental anguish and humiliation, and he has been disfigured, rendered sore and sick, lost valuable time, and put to great expense in procuring for himself medicine and medical attention—all to the plaintiff's damage in the said sum of $5,000, and hence he brings this suit.

Count 5. Plaintiff further claims of the defendant the sum of $5,000, as damages, for that on or about the 9th day of November, 1912, the defendant was engaged in the business of a common carrier of passengers over its line of railroad operated in and through Tuscaloosa county, Alabama, and along by its station of Coaling in

said county; that on or about the said 9th day of November, 1912, while plaintiff was rightfully in said station, the defendant's agent in charge of said station, whose name to the plaintiff is unknown, while in the discharge of his duty as defendant's said station agent [and while in the line and scope of his duty and employment as such agent] willfully and intentionally insulted, mistreated, cursed, and abused plaintiff, and drove him out into the darkness from said station, thereby causing the plaintiff to fall and strike his head upon the iron rail of defendant's railroad track, and to thereby suffer the infliction of a wound on his head above his left eye by coming in contact with the said iron rail, and thereby cutting the plaintiff's head with a deep gash, and his right knee was also plainfully hurt, his neck bruised and injured, and his body otherwise shaken, jarred, and bruised, as a result of all of which plaintiff had suffered intense physical pain and mental anguish and humiliation, and he has been disfigured, rendered sore and sick, lost valuable time, and put to great expense in procuring for himself medicine and medical attention—all to the plaintiff's damage in the said sum of $5,000, and hence he brings this suit.

Count 6.    Plaintiff further claims of the defendant the sum of $5,000 as damages, for that on or about the 9th day of November, 1912, the defendant was a common carrier of passengers for hire and reward in and through Tuscaloosa county, Alabama, and by its station of Coaling in said county, by means of trains of cars operated by steam upon its railroad running by said station of Coaling, which was a regular stopping place for receiving and discharging passengers, and plaintiff was then and there rightfully at said station of Coaling, where he had gone for the purpose of taking passage as a passenger over defendant's said railroad; that it was then

nighttime and very dark, and the defendant, its servants .
or agents, had negligently failed in its duty to properly ·
light the platform which it had constructed and was
using to and in connection with its depot at said sta-
tion; and that plaintiff was a stranger at said station,
and unfamiliar with said platform and the steps to the
same; that, while plaintiff was rightfully in the waiting
room of said depot as aforesaid, the defendant's agent
in charge of said station, while in the line or scope of his
duty or employment as such agent, ordered the plaintiff
to leave said waiting room; that when plaintiff, in obedi-
ence to such order, walked out of the door of said wait-
ing room onto the platform, which was dark and without
proper light, as aforesaid, he being, as aforesaid, unfa-
miliar with said platform and the steps to the same, but
naturally thinking said steps were directly in front of
the door to said waiting room, walked or fell off of said
platform for a distance of, to-wit, four or five feet to the
ground, when plaintiff's head struck the iron rail of one
of defendant's tracks, in consequence of which fall plain-. ·
tiff received a severe cut or wound over his left eye, a
painful injury to his right knee, bruises and injuries
to his neck, and other bruises, jars, and injuries to his
body, from all of which plaintiff has suffered intense
physical pain and mental anguish, has been humiliated,
disfigured, rendered sore and sick, has lost much valu-
able time and been put to great expense in procuring for
himself medicine and medical attention. Plaintiff further
avers that, as the surface of said platform in front of
said depot was elevated about four or five feet above
the ground, and the steps to the same were not in front
of the waiting room, but to the side, the construction of
said platform and steps rendered the same unsafe and
dangerous, and liable to cause personal injuries to per-
sons passing over the same, especially at nighttime,

when there was not proper light on the same; and plaintiff, avers that all of his said injuries and losses were caused by the negligence of the defendant, its servants or agents, in failing to properly light said platform as aforesaid.

Count 7.    Plaintiff further claims of the defendant the sum of $5,000 as damages, for that on or about the 9th day of November, 1912, defendant was a common carrier of passengers for hire or reward in and through Tuscaloosa county, Alabama, and by its station of Coaling in said county, by means of trains of cars operated by steam upon its railroad running by the said station of Coaling, which was a regular stopping place for receiving and discharging passengers, and plaintiff was then and there rightfully at said station of Coaling, where he had gone for the purpose of taking passage as a passenger over the defendant's railroad; that it was then nighttime and very dark, and the platform which defendant had constructed and was using in front of its depot at said station was not properly lighted; that the surface of said platform in front of said depot was elevated about four or five feet above the ground, and the steps to the same were not in front of said depot, but were to the side of the same; that the plaintiff was a stranger at said station, and unfamiliar with said platform and the steps to the same; that, while plaintiff was rightfully in the waiting room of said depot as aforesaid, the defendant's agent in charge of said station, while in the line or scope of his duty or employment as such agent, although knowing that the construction of the said platform and steps rendered the same unsafe and dangerous, and liable to cause personal injury to persons passing over the same, especially those persons who were unfamiliar with the same and required to pass thereover at nighttime, while there was not

proper light on the same, nevertheless willfully or wantonly and without any regard to plaintiff's safety (ordered or required the plaintiff to leave the waiting room and to go [drove the plaintiff] out into the darkness upon said platform; that plaintiff in obeying such order, being, as aforesaid, unfamiliar with the platform and the steps to the same, but naturally thinking said steps were directly in front of the door to said waiting room, walked or fell off of said platform for a distance of, to-wit, four or five feet to the ground, where plaintiff's head struck the iron rail of one of defendant's tracks, in consequence of which fall plaintiff received a severe cut or wound over his left eye, a painful injury to his right knee, bruises and injuries to his neck, and other bruises, jars, and injuries to his body, from all of which plaintiff has suffered intense physical pain and mental anguish, has been humiliated, disfigured, rendered sore and sick, has lost much valuable time and been put to great expense in procuring for himself medicine and medical attention. Plaintiff avers that all of his said injuries were caused by the willfulness or wantonness of defendant's said agent in ordering the plaintiff to leave said waiting room and go out onto said improperly lighted platform as aforesaid.

BROWN & WARD, for appellant.

A. G. & E. D. SMITH, and WRIGHT & FITE, for appellee.

SAYRE, J.—Count 4 in its original shape described the defendant as engaged in the business of a common carrier of passengers. But the count did not aver that plaintiff was a passenger at the time of the wrong and injury of which he complained. That averment seems to have been deliberately avoided. The allegation was

simply that plaintiff was "rightfully" in defendant's
station, and the gist of the complaint was that he was
wrongfully ejected.   By sustaining defendant's demur-
rer the court drove plaintiff to an amendment alleging
that he had gone to defendant's station for the purpose
of becoming a passenger on defendant's railroad—in
effect, that plaintiff was a passenger.   The complaint
was not of simple negligence, as in *Louisville & Nash-
ville v. Glasgow,* 179 Ala. 251, 60 South. 103, cited by
appellee, but it was of a wrong of such nature, though
not alleged to have been accomplished by force, that
necessarily it resulted from intention on the part of de-
fendant's agent.   It was, in substance, that defendant's
agent with ugly words ordered plaintiff from the prem-
ises.   The case cited is therefore not in point.   But it
does not follow that the ruling was erroneous, for, if
plaintiff was not a passenger, then as a matter of plead-
ing on the facts alleged in the original count he must
be considered as a bare licensee, whose license defendant
had a right to revoke by ordering him away, and in such
circumstances the allegation of ugly words added noth-
ing to the damages claimed on account of, to-wit, bodily
injuries; nor did the use of such words stand in the rela-
tion of proximate cause to the damages alleged.

(1) There was no reversible error in the ruling as to
count 5.   The original count was good as against the
demurrer.   After the amendment, which the ruling on
demurrer required plaintiff to make, but which in our
judgment added nothing to its essential legal effect, nor
increased plaintiff's burden of circumstantial proof, the
count was held sufficient and went to the jury.   No harm
was done.

For like reason there was no reversible error in the
ruling on the seventh count.   The amendment, which
was allowed to meet the demurrer, added nothing to the

legal effect of the count, or the burden of proof assumed
by plaintiff.

(2) Plea 4 stated a good defense. The ruling on this
plea involved the same considerations that induced the
trial court to give the affirmative charge for defendant,
and the assignments of error upon the two rulings will
be discussed in connection. Plaintiff declared as a pas-
senger in waiting. In count 6 he charged defendant
with neglect of duty to him as such a passenger, in that
the platform of the station house was not properly
lighted. In the other counts the gist of the action stated
is that he was wrongfully ejected from the waiting room.
Plaintiff's right to recover on any count depended upon
his status upon the premises as a passenger in waiting
and defendant's breach of duty to him as such.

Plaintiff and a companion, strangers in that section
of the state, had gone on foot to defendant's station at
Coaling between 1 and 2 o'clock in the morning. Going
into the waiting room, and inquiring for a train that
would take them to Tuscaloosa, and offering to buy a
ticket, they were told that there would be no train for
them until after 7 o'clock next morning, at which time
they could buy tickets. The station at the time was in
charge of a telegraph operator, and the office was not
open for the sale of tickets; the agent, who alone could
sell tickets, having locked them up and gone away for
the night. Plaintiff's testimony was that, after some
conversation concerning the situation they were in, the
agent in charge at the time told him and his companion
that they might remain in the waiting room until the
train was due, but that within an hour, addressing them
as "you d——d people," and telling them that it was
against the rules of the company for them to stay there,
in a rough and angry manner ordered them to get out,
and that thereupon, going out into the dark, he walked

off the unlighted platform, fell upon the track, and was injured. The agent told another story as to what took place, but where there is any conflict in the testimony the case has been stated according to the testimony of plaintiff.

(3-6) One who within a reasonable time goes to a railroad station with the bona fide intention of taking a train becomes thereby entitled to protection as a passenger.—*Louisville & Nashville v. Glasgow, supra,* and authorities cited. Whether or not a person is a passenger is generally a question for the jury, and always so when different inferences may be drawn from the testimony.—*North Birmingham Ry. Co. v. Liddicoat,* 99 Ala. 550, 13 South. 18. As shedding light on the question of reasonable time in the present case, defendant was properly allowed to prove an order of the Railroad Commission prescribing, among other things, that station rooms on each railroad operating within this state shall be open at least an hour before the scheduled arrival of passenger trains, and shall remain open until the departure of such trains. This order established, prima facie, at least, one hour as the reasonable time during which station rooms shall be open for the accommodation of persons intending to take passage, and by necessary effect the reasonable time within which persons intending to become passengers may expect to find waiting rooms open and ready for their reception. Special circumstances may enlarge the time; but beyond a reasonable time, on whatever facts determined, the carrier is not required to furnish lodging to prospective passengers. If, however, a railroad company through its agents opens its station far in advance of a reasonable time, and merely permits a prospective passenger to rest therein, thereafterward and until he is accepted as a passenger, or until he becomes such by necessary intendment of

law, he falls within the protection only which the law extends to licensees without express invitation. The duty to a person in that situation is to refrain from activity causing him injury and to warn him of hidden dangers known to the owner of the premises.—2 Jaggard on Torts, 892.

(7) We thing it is a clear proposition of law that there was nothing peculiar in plaintiff's situation so far as concerned defendant's right and duty in the premises —that is, there was nothing requiring as a legal duty special favor to plaintiff; that he was entitled only to such provision as the law required for the general public at Coaling; that he had no right to expect or demand the use of defendant's waiting room for five or six hours in advance of the departure of the first train on which he could take passage; and that, though he had been allowed to remain in the room, that indulgence was a mere license, which might be withdrawn at any time, provided that was not trenching upon the reasonable time which must be allowed persons intended to become passengers.

(8) For an owner of premises, revoking a license, which he has a right to do, to address the licensees angrily as "d——d people," is no assault; it may be considered as a grievous breach of good manners, but is not an injury for which the law undertakes to furnish redress, at least not in an action counting solely on bodily injuries. Plaintiff stepped off the platform on the outside and was hurt; but that is not complained of as the intentional result of his alleged wrongful ejection from the waiting room, of which most of the counts complain, but as the consequential result of that alleged wrong, for which consequence there can be no recovery, unless the ejection itself was wrongful in and of itself. Nor does the evidence afford a reasonable inference that de-

fendant's agent in fact intended or anticipated that plaintiff would step from the platform without seeing where he was going to land; nor did the fact that plaintiff was so injured have any proximate causal connection with the agent's command to leave the waiting room, in whatever impolite language that command was delivered.

(9) In the sixth count plaintiff's fall and injury are attributed to defendant's negligence in failing to have the platform properly lighted. But to plaintiff as a licensee without express invitation defendant owed no duty in that regard. He took his permission with its concomitant conditions, it may be perils, barring only dangers that were hidden from ordinary observation.— Jaggard, supra.

In the foregoing view of the case, other assignments of error are of no consequence.

Affirmed.

ANDERSON, C. J., and MCCLELLAN and GARDNER, JJ., concur.