TARCZEK, by guardian *ad litem,* Respondent, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*February 1—February 22, 1916.*

*Appeal: Verdict, when disturbed: Carriers: Railroads: When person becomes passenger: Injury at station: Defect in platform: Questions for jury: Intoxication of plaintiff: Contributory negligence: Brief stricken from files.*

1. Where a verdict is challenged in the trial court and the judge of that court deliberately approves the findings before judgment, his decision on the question is not to be disturbed unless clearly wrong.

2. One who goes to a railway station within a reasonable time before the scheduled arrival of a train, with the *bona fide* intention of taking the train, becomes a passenger.

3. Sub. 1, sec. 1797—9, Stats. 1913,—requiring railway companies to keep open their passenger stations for not less than twenty minutes before the scheduled time of arrival of a passenger train and until it has departed,—is entitled to considerable weight but is not controlling in determining what constitutes a reasonable time within the meaning of the foregoing rules.

4. Whether in this case the plaintiff, who had come to the defendant's railway station intending, as he claimed, to take a train due to arrive at 5:50 p. m., and who, while on the station platform at a time not exactly fixed but which the station agent said was about 5:20 p. m., in some way fell under the wheels of a passing freight train, was a passenger at the time of the accident, is *held* upon the evidence to have been a question for the jury.

5. It is the duty of a railway company to furnish at a station a reasonably safe platform *in view of the dangers to be apprehended;* and the dangers to be apprehended as the result of a stumble on a railway platform at a distance of four feet from a moving train are so much greater than those from a stumble on an ordinary sidewalk that the same measure of diligence cannot apply in both cases.

6. Upon evidence tending to show that plaintiff's fall from a station platform under a moving train was caused by his stubbing his toe against a plank about four feet from the track and projecting about one and three-quarters inches above the crushed stone which formed a part of the platform next to the planking, the

question whether the platform was reasonably safe was one for the jury.

7. Upon the evidence, stated in the opinion, it is *held* that plaintiff was not conclusively shown to have been intoxicated or to have been guilty of contributory negligence.

8. A brief in which defendant's claim agent, a member of the bar of · this court who procured typewritten statements from several of the witnesses in the case soon after the accident, is charged with framing up a false defense, manufacturing testimony, and suborning perjury in this and other cases,—there being no foundation for the charge except the fact that the making of certain statements said to have been made to him is denied,—is stricken from the files.

APPEAL from a judgment of the circuit court for Brown county: HENRY GRAASS, Circuit Judge. *Affirmed.*

Personal injuries. The plaintiff, a Russian laborer, nineteen years of age at the time of the accident, was on the station platform at the village of Suring, Oconto county, at about 5:20 p. m. January 1, 1914, as a south-bound freight train passed the station, and in some way fell under the wheels of the train, losing his right hand and the little finger of his left hand. He claimed that he was at the station for the purpose of taking a south-bound passenger train which was due at 5:50 p. m. and that he stubbed his toe on the edge of a plank in the station platform, which was raised above the rest of the platform about one and three-quarters inches, and was thus thrown under the train. The jury found by special verdict (1) that the plaintiff fell under the train on the day stated; (2) that the fall was caused by his stumbling against one of the planks of the station platform; (3) that the relation of passenger and carrier then existed between plaintiff and defendant; (4) that the platform was defective and not reasonably safe for passengers; (5) that such defective condition constituted negligence; (6) that such negligence was the proximate cause of plaintiff's injury; (7) that the platform was also defective by reason of insufficient lighting; (8) that such defective condition constituted negligence;

(9) that such negligence was the proximate cause of plaintiff's injury; (10) that plaintiff was not intoxicated at the time of the injury; (11) that want of ordinary care on his part did not contribute to his injury; and that plaintiff's damages were $7,260.

The defendant moved for judgment notwithstanding the verdict, and also to change the answers and for judgment on the verdict as corrected, but the motions were overruled and judgment rendered for the plaintiff on the verdict, from which judgment defendant appeals.

*Edward M. Smart,* for the appellant.

For the respondent the cause was argued orally by *V. I. Minahan* and *R. A. Kaftan.*

Winslow, C. J. No detail errors are alleged, but the broad contention is made that a verdict for the defendant should have been directed because the evidence showed beyond dispute that (1) the plaintiff was not a passenger, (2) that the platform was sufficient and properly lighted, (3) that the plaintiff was intoxicated, and (4) that he was guilty of contributory negligence.

If we were triers of the facts we think we should find much difficulty in reaching the conclusions reached by the jury, but we are not: our function is simply to ascertain whether there is any credible evidence to support the findings of the jury. In this connection it is to be remembered that where, as in this case, the verdict is challenged in the trial court and the judge of that court deliberately approves the findings before judgment, his decision on the question is not to be disturbed unless clearly wrong. *Slam v. Lake Superior T. & T. R. Co.* 152 Wis. 426, 140 N. W. 30; *Lingelbach v. Theresa Village Mut. F. Ins. Co.* 154 Wis. 595, 143 N. W. 688.

We shall take up the appellant's contentions in the order indicated.

1. It is doubtless true that one who goes to a railway station within a reasonable time before the scheduled arrival of a train, with the *bona fide* intention of taking the train, becomes a passenger. 4 Elliott, Railroads (2d ed.) § 1579; *Ill. Cent. R. Co. v. Laloge,* 113 Ky. 896, 69 S. W. 795, 62 L. R. A. 405; *Widener v. Ala. G. S. R. Co.* (Ala.) 69 South. 558.

Generally the question is one for the jury, but the circumstances may be such as to make it a question for the court. Was it a question for the court in this case? We think not. It appears by the evidence that the passenger train which the plaintiff desired to take was due at 5:50 p. m. The plaintiff came to the station and sat down in the waiting room at about 3 p. m. A freight train was due at 3:30 p. m., but was late on the day of the accident. This was the train under which the plaintiff fell. The exact time of its arrival is not fixed by the testimony of any witness. The station agent says that it was about 5:20 p. m. Another witness says that he went to the station at about 5:15, but whether the witness meant that he reached the station at that time or left his house, some blocks distant, does not appear. No other witness attempts to fix the time, and it seems evident that no one looked at a clock. It appears, however, that another man who was intending to take the passenger train, one Yakel, who was then a section foreman in the defendant's employ, and who had been visiting relatives in the village, was getting ready to go to the station when he heard the freight train whistle and immediately went to the station, about three blocks distant, with two suitcases. The witness was having one of his suitcases checked by the station agent's assistant at the time the freight train passed the platform and the accident happened. This circumstance has considerable persuasiveness in view of the inability of any witness to fix the exact time. Yakel was a railroad man. Presumably he knew the scheduled time of the train which he expected to

take, and he was about to go to the station when the distant whistle of the freight train was heard. When he reached the station the proper employee was ready to and did in fact check his baggage for the passenger train. All this seems to indicate that the usual preparations were being made for the arrival of the passenger train at the time of the accident.

The appellant calls attention to sub. 1 of sec. 1797—9, Stats. 1913, requiring railway companies to keep open their passenger stations for not less than twenty minutes before the scheduled time of arrival of a passenger train and until the train has departed, and claims that this fixes a legislative standard of reasonable time, which in the absence of special circumstances must be deemed controlling. This provision is certainly entitled to be considered as having considerable weight in determining the question, but we should be unwilling to say that it is in any sense controlling. In view of the uncertainty as to the exact time in the present case and the fact that at least one other prospective passenger considered that it was time to go to the station and prepare for departure on the same train, we feel unable to say that the question was not for the jury.

2. It appeared that the station at Suring is on the east side of the railway track, which runs north and south. The platform consisted in part of planking and in part of crushed-stone screenings. The planking consisted of five sixteen-foot planks laid side by side lengthwise next to the track and extending back from the track four feet and two inches. The balance of the platform was of crushed-stone screenings packed down like a macadam pavement, except that in front of the station doors connecting planks ran from the doorstep to the outer planking aforesaid and at right angles therewith. The defect claimed to exist in this platform was that the crushed stone had been worn away, or was originally at a lower level than the planking, so that the edge of the plank projected abruptly above the crushed stone about one inch

and three-quarters.    There was considerable testimony as to
the height and abruptness of this rise, but there was cer-
tainly testimony which would entitle the jury to find that the
condition was practically that claimed to exist by the plaint-
iff.

It is said by the defendant that the duty of the defendant
is only to provide a reasonably safe platform and that such
an inequality in the platform cannot be held to make it un-
safe.    Many cases are cited from this and other courts hold-
ing in effect that such depressions in city sidewalks and
streets are not defects within the legal meaning of that term.
We do not regard these cases as controlling or particularly
helpful.    The carrier's duty is to furnish a reasonably safe
platform *in view of the dangers to be apprehended.*    The
dangers to be apprehended as the result of a stumble on a
railway platform at a distance of four feet from a moving
train are so much greater than the dangers to be apprehended
from a stumble on the ordinary sidewalk that it is evident
that the same measure of diligence cannot apply.    *Crowe v.
Mich. Cent. R. Co.* 142 Mich. 692, 106 N. W. 395.    We
regard the question whether the platform in question here
was reasonably safe in view of the dangers to be apprehended
as properly a jury question.    Our conclusion on this point
renders it unnecessary to consider the question as to alleged
insufficient lighting of the platform.

3 and 4. The question as to the plaintiff's alleged intoxi-
cation and his alleged contributory negligence will be consid-
ered together.    The plaintiff was a laborer, a "lumberjack"
who had been working in a lumber camp.    He was looking
for work.    On the night before the accident he stopped at a
place called Mountain, fifteen miles north of Suring, and
got breakfast there.    He, with a companion aged thirty, left
Mountain at 4 o'clock a. m., stopped at Breed, six miles north
of Suring, at 8 a. m., and were next seen at Suring in the
afternoon.    Plaintiff claims that when he got to Suring at

about 3 p. m. he went to the station and sat down in the wait-
ing room, and his companion left him; that they had heard
of work to be had at the next station south of Suring, about
two miles south, and had determined to wait and take the
train to that point, and that his partner had agreed to pay
his fare; that he had fifty cents and no more in his pocket
and had no dinner. It appears undisputedly that the plaint-
iff sat in the station drowsing until the freight train ap-
proached. He claims that at this time his companion came
in and told him the train was coming; that he went out the
door; that as he was going out a man told him that it was not
his train, but that it would come quick; that he walked south on
the platform and thought he would stand out there and wait
for his train; that he struck his toe on something and fell
under the train. There were several witnesses who claimed
to have seen two men resembling the plaintiff and his com-
panion drinking in saloons on the afternoon in question, and
there was evidence to the effect that the plaintiff staggered as
he came out of the station and that he smelled strongly of
whisky when he was picked up after the accident. On the
other hand, the plaintiff himself testified that he had no beer
or whisky at Suring that day. The station agent and his
helper both noticed the plaintiff sitting in the waiting room
at about 3 p. m., and stated that he sat there until he went
out to meet the train; that he was quiet and looked rational;
and that neither of them saw any evidence that he was drunk
or that he had liquor about him. That there were two men
in a somewhat intoxicated condition on the streets and in the
saloons of the village that afternoon seems quite certain from
the testimony of a number of witnesses, but the fact that the
plaintiff was one of them is certainly a matter of considerable
doubt. If any fact is a verity in the case it is the fact that
the plaintiff was sitting quietly and drowsily in the station
from about 3 o'clock until about 5:20 o'clock, yet the two
drunken foreigners or lumberjacks were seen by Mr. Smith,

superintendent of the Falls Manufacturing Company, on the main street near the station about *four* o'clock p. m. and several times again *within the next half or three quarters of an hour*. This testimony seems to make it rather more than probable that the plaintiff was not one of the two lumberjacks who were seen drunk by the witnesses. It is to be remarked also that several of the witnesses were not at all sure that the plaintiff was one of the men whom they saw. On the whole evidence we cannot say that the plaintiff was conclusively shown to have been intoxicated or to have been guilty of contributory negligence.

Twelve pages of the respondent's brief are devoted to abuse of the defendant's claim agent, who procured typewritten statements from several of the witnesses in the case soon after the accident. The agent is charged with framing up a false defense, manufacturing testimony, and suborning perjury in this and other cases. There is no foundation for the charge except the fact, not infrequent, that the making of certain statements said to have been made to the claim agent is denied. Such things as are here charged could hardly be done without the knowledge of the defendant's attorney. Both the claim agent and the defendant's attorney are members of the bar of this court. If they are guilty of these things measures should be taken to rid the bar of their presence; if they are not guilty they have no redress. To embalm these charges upon the files of this court in such a way that the accused party has no opportunity to meet them seems to us a gross abuse of counsel's privilege. If counsel thinks his case is aided by such tactics he is entirely mistaken. The judgment is affirmed in spite of this breach of privilege, not because of it. The brief is ordered to be stricken from the files.

*By the Court.*—Judgment affirmed with costs, except that no costs are to be allowed for the printing of respondent's brief.