ARNEBERG, Administratrix, Respondent, vs. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*October 20—November 13, 1923.*

*Carriers: Passenger riding in caboose: Death: When relation of passenger exists: Contract express or implied: Failure to charge fare: Custom: Negligence: Failure to guard siding.*

1. A finding of the jury that one who was killed while riding in a caboose used as a passenger coach entered it with the intent to become a passenger on such terms as the railroad company might reasonably require, is *held* to be sustained by the evidence, and not to be inconsistent with a finding that it was the custom of the conductor, known to deceased, not to charge for the trip. p. 89.

2. One entering a moving caboose as it passed a stopping point at which there was no depot or other shelter, with intent to take passage and comply with all reasonable regulations of the carrier, is entitled to the same degree of care as other passengers. p. 91.

3. Whether a contract creating the relation of carrier and passenger exists depends largely on the facts of each case.  p. 91.
4. A railroad company which, partly at its own expense and partly at the expense of a shipper, constructed and maintained a siding for which the shipper paid rent, at a point from which there was a continuous down grade for at least one and one-fourth miles, without installing any device to prevent cars from escaping and coasting down the grade, is liable for the death of a passenger in a collision between a train on the main line and loaded freight cars which escaped from the siding.  p. 94.

APPEAL from a judgment of the circuit court for Lincoln county: A. H. REID, Circuit Judge.  *Affirmed.*

Sigwald Arneberg was instantly killed while occupying a caboose used as a passenger coach which was attached to the end of a logging train.  His death occurred through the collision of the caboose with three loaded flat cars which had escaped from a siding or passing track and coasted down a steep grade.

The collision occurred at a logging station called Dunfield, on the line of the defendant railroad company.  The flat cars escaped from a switch track at Grundy station, about two miles to the north.  This track had been laid for the convenience of R. C. Thielman, who was engaged in logging operations.  Thielman furnished the ties, paid for the placing of them and the rails, and paid a rental for the use of the track.  The track was maintained by the defendant company.

The switch track was approximately 700 feet long and extended parallel with the main track.  It was connected at the north and south ends with the main line by switches which had been installed at the expense of the company. From a point about in the center of the switch track there was a pronounced down grade both to the north and to the south.  From the south end of the passing track to Dunfield the main line runs on a down grade ranging from seven-

tenths of one per cent. to one and three-tenths of one per cent.

The train upon which deceased met his death ran daily between Gleason, a point a few miles south of Dunfield, and Grundy Junction. It was chiefly a logging train, but the company customarily carried passengers in the caboose. On the run from Gleason to the Junction the train proceeded caboose foremost.

On the day of the accident Arneberg boarded the train at Gleason and paid the conductor twelve cents, the fare to Dunfield. When the train reached Langley Spur, about fifty rods south of Dunfield, Arneberg got off. At this point the Heineman Lumber Company, for whom deceased worked, had one of their stations. From here Arneberg, in company with the conductor of the train, walked to Dunfield, where they had dinner while the train crew was switching.

After dinner Arneberg walked with one Ebert to a place on the track called Dunfield Landing. The conductor stood near a switch and directed switching operations. It appears that it was the intention of the conductor to proceed north as soon as the switching was done.

Several witnesses testified that Arneberg had said he was going to High Landing, a stopping point about a half mile north of Dunfield. As the caboose passed him, going at the rate of three miles an hour, Arneberg stepped aboard, again saying, according to the testimony, that he was going to High Landing. There was testimony to the effect that he also said he was going to get into the caboose to save walking farther when the train was ready to leave; and that he was tired and wanted to rest.

A few moments after Arneberg entered the caboose the collision occurred and he was killed instantly.

There was no depot at Dunfield. Neither was there any platform or shelter for prospective passengers. There was

testimony that it was customary for passengers to enter the caboose at the place deceased entered, and also that it was customary for them to go into the caboose at any other convenient place.

On behalf of the company the conductor testified that he never charged a fare for the half-mile distance from Dunfield to High Landing. The fare paid by deceased was twelve cents for the distance from Gleason to Dunfield. The fare from Gleason to High Landing was fifteen cents. There was no published tariff.

There was conflicting testimony as to whether the switch through which the flat cars passed was damaged. It is undisputed that there was no derailing device on the track in question. There was conflicting evidence as to whether the cars had been blocked to prevent their moving when they were placed on the switch track. Several small sticks of wood were introduced in evidence, and the claim was made that the cars had been blocked with these.

The jury found (1) that the deceased, at the time he entered the caboose at Dunfield, did so with the intention of becoming a passenger to High Landing on such terms as the defendant might reasonably require; (2) that it was the general practice of defendant's conductor, on or before the day of Arneberg's death, to the knowledge of Arneberg, not to charge a fare from Dunfield to High Landing; (3), (4) that the three flat cars escaped through a closed switch from the passing track at Grundy Junction and out upon the main line; (5) that the cars escaped through the failure of the crew on the Thielman train to block them, and that this negligence was a proximate cause of the death; (6) that the defendant was negligent in omitting to make any further provision than it did to prevent cars placed on the passing track from escaping and running down grade toward Dunfield; (7) that this negligence was a proximate cause of the accident; and (8) that $10,000 would compensate the plaintiff for the death of her husband.

Judgment was ordered accordingly.

Arneberg v. Chicago, M. & St. P. R. Co. 182 Wis. 85.

For the appellant there was a brief by *H. J. Killilea* and *Rodger M. Trump,* both of Milwaukee, and *John Van Hecke* of Merrill, and a separate brief by *C. H. Van Alstine* of Milwaukee, of counsel, and oral argument by *Mr. Killilea.*

For the respondent there was a brief by *Smith & Wurster* of Merrill, attorneys, and *Francis E. McGovern* of Milwaukee, of counsel, and oral argument by *Mr. McGovern* and *Mr. Ralph E. Smith.*

JONES, J.   It is the first contention of defendant's counsel that on the undisputed evidence the deceased was not a passenger at the time of his death.   They base their claim on the grounds (1) that he boarded the caboose intending to ride to High Landing without paying fare; (2) that he boarded the caboose when it was moving, without the knowledge or consent of any member of the train crew, and was not accepted as a passenger.

Arneberg was rendering important services for his employer, was receiving a salary of $4,000 a year, and at the time of his death had on his person about $100.   Although he paid his fare to Dunfield, where he expected to stop, and expected to go to High Landing, about a half mile farther, it seems highly improbable that he intended to evade payment of any railroad fare which might be reasonably demanded of him, and this view is supported by the answer of the jury to the first question.   We consider that this finding was sustained by the evidence.

This finding does not seem to us necessarily inconsistent with the second finding to the effect that it was the custom, known to Arneberg, not to charge for transportation from Dunfield to High Landing.   The reason for this custom may have been that the trouble to the conductor was hardly compensated by the trifling amount to be collected.   Whatever may have been the reason, there is no evidence that there was any agreement or understanding between the conductor and Arneberg that he should not pay the lawful fare, and

there is every reason to believe that he would have paid it if the conductor had entered the train and demanded it.

The present case is widely different from the Wisconsin cases cited by appellant's counsel relating to this subject. In *Spencer v. C., M. & St. P. R. Co.* 161 Wis. 474, 154 N. W. 979, the person claimed to be a passenger was in the cab of a locomotive, a place for the exclusive use of the engine crew, and was there for the purpose of obtaining a free ride. It was held that he was where he had no right to be and was a trespasser.

In *Annas v. M. & N. R. Co.* 67 Wis. 46, 30 N. W. 282, the passenger was riding on a free pass, and it was held that the carrier might relieve itself from liability, by contract, against the negligence of its employees except for gross negligence.

In *Daley v. C. & N. W. R. Co.* 145 Wis. 249, 129 N. W. 1062, it was held that one attempting to steal a ride was a trespasser and that he might be lawfully ejected if unnecessary or excessive force was not used.

It is argued by appellant's counsel that the relation of passenger and carrier is created only by contract, express or implied, and that no contract can be implied from the circumstances under which Arneberg entered the car. In this connection the absence of any depot, platform, or shelter of any kind except the caboose should be considered. It was proven that it was the custom of passengers to enter the caboose as soon as it arrived and wait for the train to start, and that people had never been ordered to stay out of the caboose until the train should leave.

There is some claim by appellant's counsel that Arneberg expected to ride around while the switching process was going on, but the testimony does not seem to sustain the contention. In view of the absence of the usual conveniences for passengers, we do not regard it as very material that

Arneberg entered the car to rest while waiting, nor that he stepped into the caboose while it was moving at the rate of three miles per hour.

If one who attempts to enter a moving car is injured in the act and is found guilty of contributory negligence, he must take the consequences. But if he enters the car intending to take passage and intends to comply with the reasonable regulations of the carrier, we do not see why he is not entitled to the same degree of care as other passengers.

With the rule that the contract of carrier and passenger is based on contract, express or implied, there is no dispute, but in determining whether such a contract exists each case must be judged largely on its own facts.

It is urged by defendant's counsel that by boarding a moving caboose Arneberg did not present himself at a proper time and place so as to create a contract of carriage and that he was not accepted as a passenger. It is clear from all the testimony that he intended to continue his passage, and we cannot agree that the duty of the company to use care did not begin until the conductor appeared.

We shall not discuss at any length the conditions necessary to create the relation of passenger and carrier for the reason that in our opinion this case falls easily within the rule well established by former decisions of this court.

In *Tarczek v. C. & N. W. R. Co.* 162 Wis. 438, 156 N. W. 473, where the plaintiff was injured on a railway platform, it was held that "one who goes to a railway station within a reasonable time before the scheduled arrival of a train, with the *bona fide* intention of taking the train, becomes a passenger."

In *Karr v. Milwaukee L., H. & T. Co.* 132 Wis. 662, 113 N. W. 62, it was held that "one who in good faith, intending to take passage, has signaled an approaching interurban car in the regular and recognized manner, to which

signal the motorman has responded in the usual way by whistling or by setting his brake, is a passenger." In that case it was said (p. 667):

"One in good faith going through the depot to take passage on the cars is a passenger, although he has not bought a ticket. . . . One who enters upon depot grounds by the approaches furnished by the carrier is a passenger. The fare does not have to be paid nor the train entered, but the person must merely enter within the control of the carrier at the depot through the usual channels of business with the intention in good faith of becoming a passenger by either paying fare before or after entering the train."

Among other cases bearing on the general subject are *Gabbert v. Hackett*, 135 Wis. 86, 115 N. W. 345; *Lugner v. Milwaukee E. R. & L. Co.* 146 Wis. 175, 131 N. W. 342; *Zimmermann v. Mednikoff*, 165 Wis. 333, 162 N. W. 349.

Appellant's counsel urge that even if Arneberg was a passenger judgment should have gone for defendant. One ground for this contention is that the track in question was a private track of the lumber company for the maintenance of which defendant was not responsible, and therefore it was not liable for the negligent manner of blocking the cars by the agents of the lumber company.

This passing track was used for many purposes by both the lumber company and the defendant. It was maintained and kept in repair by the defendant. There was considerable testimony on the subject, and the general situation and mode of carrying on the business on the passing track was thus described in the able opinion of the trial judge:

"The defendant company had constructed at Grundy Junction special facilities for one of its shippers by putting in a siding, partly at its own expense and partly at the shipper's expense. The leads and switches were paid for by the defendant. The grading and laying of the ties and rails were paid for by the shipper, and the shipper paid a rental for

Arneberg v. Chicago, M. & St. P. R. Co. 182 Wis. 85.

the use of the rails. It was built by workmen of the defendant and in accordance with the defendant's directions. There was a continuous down grade from that point to Dunfield, or farther, one and one-fourth miles at least, the grade being so great that a car let loose at the north end would run down the grade and continually gain speed and attain great velocity.

"The Thielman siding at Grundy Junction was not level, but from the middle of its length it sloped both ways, north and south, so that a car placed on it would not stand without being blocked, braked, or otherwise held. Any omission to block, brake, or otherwise fasten the car on the siding meant that it would of its own weight run either to the north or to the south, and if it ran to the south, no matter whether the switch was open or closed, it would run down the main line at least to Dunfield and farther, with dangerous velocity. It is hard to conceive of a more dangerous thing than a car or cars running by their own momentum down such a grade, for such a distance, upon a railroad track where there may at any time be a train or workmen. The defendant maintained this condition while it was there, from day to day delivering empty cars upon the Thielman siding, and taking loaded cars from it, with no device for assuring that no cars should be let loose to run down the grade, other than the performance by all of the various trainmen, both of the defendant and of Thielman, with absolute certainty of their duty to secure the cars so that they would not run.

"The installing and maintenance of such a siding at such a point at the end of such a long continuous down grade seems in itself sufficient evidence of negligence. It was not necessary to have a siding upon which cars would not stand unattended, unblocked, and unbraked. It was a simple matter to have such a siding level, and if such a siding as was built should be maintained, it seems clearly to have been the duty of the railway company to have installed a derail, or some other sufficient device, to secure against what seems to have been a grave and easily ascertained danger."

The rule of law in a case where somewhat similar conditions existed between a railroad company and a logging company was stated in an opinion by Mr. Justice WINSLOW,

in which the railroad company was held liable for the negligent acts of the other company. *Jefferson v. C. & N. W. R. Co.* 117 Wis. 549, 94 N. W. 289.

In the present case the jury found that the defendant was negligent in failing to make proper provision for the escape of cars from the passing track, and their finding should not be disturbed. We conclude that the judgment should be affirmed.

*By the Court.*—Judgment affirmed.